FILED
United States Court of Appeals
Tenth Circuit

July 29, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BP AMERICA, INC.; BP
CORPORATION NORTH AMERICA,
INC.; BP PRODUCTS NORTH
AMERICA, INC.; and BP AMERICA
PRODUCTION COMPANY,

     Petitioners,

v.

STATE OF OKLAHOMA, ex rel.,
W.A. DREW EDMONDSON,
Attorney General of Oklahoma,

     Respondent.

No. 09-705

---

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:09-CV-00945-M)**

---

David J. Zott, Kirkland & Ellis LLP, Chicago, IL (Andrew A. Kassof, Katheleen
A. Ehrhart, and Matthew S. Buckley, Kirkland & Ellis LLP, Chicago, IL; and D.
Kent Meyers and Miles Tolbert, Crowe & Dunlevy PC, Oklahoma City, OK, with
him on the petition), for Petitioners.

William A. Isaacson, Boies, Schiller & Flexner LLP, Washington, D.C. (Brian K.
Herrington, Herrington Law, PA, Jackson, MS; Thomas A. Bates and Jeremiah L.
Streck, Assistant Attorneys General, Office of the Attorney General for the State
of Oklahoma, Oklahoma City, OK; Henry A. Meyer, III, PLLC, Oklahoma City,
OK; James F. Kelly, Brent Coon & Associates, St. Louis, MO; Carlos M. Sires,
Boies, Schiller & Flexner LLP, Fort Lauderdale, FL; and Preston A. Trimble,
Trible Law Office, P.C., Norman, OK, with him on the response), for Respondent.

Before **BRISCOE,** Chief Judge, **TACHA,** and **GORSUCH,** Circuit Judges.

**GORSUCH,** Circuit Judge.

Drew Edmondson, the Attorney General of Oklahoma, sued the petitioners in this case (collectively "BP") in Oklahoma state court, alleging that they manipulated propane gas prices in violation of various provisions of the Oklahoma Consumer Protection Act. BP responded by removing the case to federal district court, arguing that it qualified for federal jurisdiction because it was a "mass action" under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4. Ultimately, however, the district court disagreed with BP's analysis, held the lawsuit was not a "mass action," and ordered it remanded to state court. BP now seeks leave to appeal the district court's remand order.

As a general rule, remand orders aren't appealable. But like so many rules, this one has its exceptions. Relevant for our purposes, CAFA expressly provides that "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action [including a mass action] to the State court from which it was removed." 28 U.S.C. § 1453(c)(1). Of course, this statute says only that we *may* hear remand appeals in mass actions. The question remains when we *should* exercise the discretion afforded to us by Congress to "accept" such an appeal. In what follows, we identify certain

considerations relevant to that question and, applying those considerations, grant

BP's petition for leave to appeal.

I

In 2009, Attorney General Edmondson filed suit against BP in Oklahoma

state court, claiming that, from approximately 2003 to 2006, BP deceptively

manipulated prices for propane. The alleged upshot was that Oklahoma

consumers paid higher prices for propane than they otherwise would (or should)

have paid. And all this, the Attorney General asserted, violated several

provisions of Oklahoma's consumer protection laws. Asserting the right to bring

suit "under his common law powers as *parens patriae*," Attorney General Pet., BP

Pet. for Leave to Appeal an Order of Remand ("BP Petition") Ex. 2 at 16, by way

of remedy the Attorney General sought restitution, civil penalties, and injunctive

relief, including the revocation of BP's license to do business in Oklahoma.[*]

In reply, BP removed the state court action to the United States District

Court for the Western District of Oklahoma, invoking CAFA. Among other

things, that statute affords a federal forum for "mass action[s]," which the statute

proceeds to define as civil actions that involve, among other things, "monetary

---

[*] The term *parens patriae*, literally "parent of the country," derives from the historical right of the English monarch to sue to enforce the "royal prerogative." *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 257 (1972) (quotation marks omitted). In the United States, it refers to the "right of a State to sue . . . to prevent or repair harm to its 'quasi-sovereign' interests." *Id.* at 258. *See generally Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 600-07 (1982).

- 3 -

relief claims of 100 or more persons [that] are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i); *see also* 28 U.S.C. § 1441(a). According to BP, it is individual Oklahoma propane purchasers — and not the State of Oklahoma or the Attorney General — who are the "real parties in interest" in this litigation. BP Notice of Removal, BP Petition Ex. 12 at 1. And it is *these* plaintiffs whose "claims" Attorney General Edmondson's lawsuit "propose[s] to be tried jointly." 28 U.S.C. § 1332(d)(11)(B)(i). Because there are more than 100 such "real" plaintiffs, and because their claims indisputably meet CAFA's other requirements for federal jurisdiction, BP took the view in removing this case that it properly belonged in federal district court.

On arriving in federal court, Attorney General Edmondson responded with a motion to remand the case to state court. He maintained that his lawsuit was a *parens patriae* action, with the Attorney General acting in a quasi-sovereign capacity to represent "the State only — not . . . any particular Oklahoma consumers." Attorney General Mot. to Remand, BP Petition Ex. 13 at 1. And because he, as the State's representative, is the sole plaintiff, he argued there aren't the 100 or more plaintiffs needed to sustain federal jurisdiction under CAFA's terms. Even if all that weren't the case, the Attorney General added, BP's removal was still inappropriate because CAFA eschews federal jurisdiction over cases in which "all of the claims in the action are asserted on behalf of the

- 4 -

general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action." 28 U.S.C. § 1332(d)(11)(B)(ii)(III). Here, the Attorney General argued, the Oklahoma Consumer Protection Act specifically authorized his action on behalf of the "general public" of Oklahoma. *See* Okla. Stat. tit. 15, §§ 751-764.1.

At the end of it all, the federal district court agreed with Attorney General Edmondson. Holding federal jurisdiction lacking under CAFA, the court ordered the case remanded to Oklahoma state court. And so it is that BP now petitions us for leave to appeal that remand order. Before we can consider the merits of BP's application, though, we must first address a question about our authority to do so.

## II

Generally speaking, federal courts of appeals may not review district court remand orders. This is by dint of 28 U.S.C. § 1447(d), which provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title [which concerns civil rights violations] shall be reviewable by appeal or otherwise." *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1865-66 (2009); *see also In re C&M Props., L.L.C.*, 563 F.3d 1156, 1166 (10th Cir. 2009).

But CAFA affords an exception to this general rule. "[N]otwithstanding section 1447(d)," the statute tells us, "a court of appeals may accept an appeal

- 5 -

from an order of a district court granting or denying a motion to remand a class action [including a mass action] to the State court from which it was removed if application is made to the court of appeals not less than 7 days after entry of the order." 28 U.S.C. § 1453(c)(1) (version operative until Nov. 30, 2009); *see also Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1093 n.2 (10th Cir. 2005) (holding that "not less than 7 days" is a "typographical error" and that the "statute should read that an appeal is permissible if filed 'not more than' seven days after entry of the remand order"). Because the district court judgment presented for our review is an order to remand a purported mass action, and because BP's application for leave to appeal was filed within the seven-day window, as the Attorney General concedes, § 1453(c)(1) would seem to put to rest any reasonable doubt as to our jurisdiction to consider BP's application.

With this conclusion, however, Attorney General Edmondson begs to differ. To be sure, he acknowledges that § 1453(c)(1) exempts CAFA cases from § 1447(d) and its concomitant bar against appellate review of remand orders. But CAFA doesn't do anything to diminish the force of § 1447(c), and that subsection, he says, is sufficient unto itself to extinguish our jurisdiction in this case. Subsection 1447(c) provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). In such cases, "[a] certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court," and "[t]he

- 6 -

State court may thereupon proceed with such case." *Id.* It is undisputed here that the clerk of the federal court mailed the remand order to the clerk of the state court several days before BP filed its petition with us. And that action, Attorney General Edmondson urges, divested all federal courts — including our court — of jurisdiction to consider any issue in the case. *See* Opposition to BP Petition at 3-6.

We must disagree. When we interpret a statute we begin, of course, with its plain terms. And here, as we've mentioned, the text of § 1453(c)(1) provides that a court of appeals "may accept an appeal" from an order of remand "if application is made to the court of appeals not [more] than 7 days after entry of the order." 28 U.S.C. § 1453(c)(1). In other words, if a party petitions this court for leave to appeal within seven days of the entry of the remand order, then the determination whether to allow the appeal rests in our discretion. The statute doesn't place any other conditions on our discretion.

Neither does § 1447(c) have the purchase that the Attorney General purports. That subsection merely directs the district court clerk to mail an order of remand to the state court; it does not, by its terms, operate to deny the circuit courts of jurisdiction over appeals of district court remand orders. That work is ordinarily done, instead, by § 1447(d) and its direction that remand orders generally are "not reviewable on appeal." 28 U.S.C. § 1447(d). Yet Congress has specifically and explicitly suspended the operation of § 1447(d) with respect to

CAFA remand orders arising, like this one, under § 1453(c)(1). *See id.*

§ 1453(c)(1) ("a court of appeals may accept an appeal from an order of a district

court granting or denying a motion to remand a class action [including a mass

action] to the State court from which it was removed"). So it is that reading

§ 1447 as a whole, together with § 1453, hurts rather than helps the Attorney

General's cause. And this is surely what the Second Circuit had in mind when it

held that § 1453(c)(1) does not condition appellate jurisdiction on whether the

district court stays its order of remand. *See Estate of Pew v. Cardarelli*, 527 F.3d

25, 28 (2d Cir. 2008); *see also* 14C Charles Alan Wright et al., Federal Practice

and Procedure § 3739, at 907 (4th ed. 2009) ("[A] remand is effective when the

district court mails a certified copy of the remand order to the state court . . . .

The effectiveness of a remand order under the principles stated above does not,

however, prevent a federal appellate court from reviewing a remand order that is

appealable.").

To operate as the Attorney General would have it, § 1453(c)(1) would have

to read very differently than it does, providing instead that the court of appeals

may accept an appeal if application is made within seven days *and if the court*

*accepts that application before the clerk of the district court sends the remand*

*order to the state court pursuant to 28 U.S.C. § 1447(c).* That second, italicized

condition, however, appears nowhere in the statute, and we are not at liberty to

take our editing pencils to what Congress has written. "Where, as here, the

statute's language is plain and plainly satisfied, 'the sole function of the courts' can only be 'to enforce it according to its terms.'" *United States v. Adame-Orozco*, 607 F.3d 647, 652 (10th Cir. 2010) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)).

Finding no shelter in the language of the statute, Attorney General Edmondson seeks refuge in case law. But here, as well, his arguments miss their intended mark. All of the authority he cites simply holds that the transmission of the remand order from the federal district court clerk to the state court, as contemplated by § 1447(c), operates to divest federal *district courts* of further jurisdiction over the case. *See* Opposition to BP Petition at 3-5; *see also* 14C Wright et al., *supra*, § 3739 at 902 & n.102. None of his cited authorities speaks to the jurisdiction of the federal *courts of appeals*. *See, e.g.*, *Migis v. AutoZone, Inc.*, 2009 WL 690627, at *2 (D. Or. Mar. 6, 2009) ("When a district court certifies a remand order to state court under § 1447(c), the *district court* no longer has jurisdiction . . . ." (emphasis added)); *Asperger v. Shop Vac Corp.*, 2007 WL 4247423, at *1 (S.D. Ill. Nov. 30, 2007) ("[O]nce a federal district court remands a case and mails a certified copy of its order to the state court, the *district court* loses all jurisdiction . . . ." (emphasis added) (quotation marks omitted)); *Coy Chiropractic Health Ctr., Inc. v. Travelers Cas. & Sur. Co.*, 2007 WL 2219102, at *2 (S.D. Ill. July 27, 2007) (same). In fact, one of the cases on which the Attorney General relies actually confirms that "CAFA allows *appellate review of*

*the remand ruling notwithstanding § 1447(d)."  Migis*, 2009 WL 690627, at \*2 (emphasis added).  Thus, the Attorney General has not directed our attention to any case law casting doubt on our appellate jurisdiction, and our independent research likewise has uncovered none.

Much to the contrary.  CAFA is just one of several instances where Congress has chosen to extend appellate jurisdiction over remand orders.  *See* 14C Wright et al., *supra*, § 3740, at 977-78 ("There are four other statutory exceptions" beyond CAFA and bankruptcy court remands "to the restriction on appellate review set forth in Section 1447(d) . . . .").  The Attorney General's (mis)reading of § 1447(c) — as somehow stripping courts of appeals of jurisdiction after a remand order has been mailed to a state court — presumably would bar us from hearing *all* of these sorts of cases.  Of course, the Attorney General cites no authority so holding, nor does he even address the other exceptions to § 1447(d).

### III

Assured of our jurisdiction to consider BP's petition, we may now proceed to do just that.  As we've mentioned, § 1453(c)(1) provides us with discretion to accept an appeal of a district court's remand of a purported mass action under CAFA.  *See* 28 U.S.C. § 1453(c)(1) ("court of appeals *may* accept an appeal") (emphasis added).  The question thus becomes when we should exercise that discretion.  Though this is a novel question in our own circuit, happily a number

of our sister circuits have already confronted it and left behind useful guidance. Among these cases, we find the First Circuit's recent exposition in *College of Dental Surgeons of Puerto Rico v. Connecticut General Life Insurance Co.*, 585 F.3d 33 (1st Cir. 2009), particularly helpful.

There, the First Circuit outlined a number of factors it would consider in deciding whether to grant leave to appeal under CAFA. That list includes: (1) "the presence of an important CAFA-related question"; (2) whether the question is "unsettled"; (3) "whether the question, at first glance, appears to be either incorrectly decided or at least fairly debatable"; (4) "whether the question is consequential to the resolution of the particular case"; (5) "whether the question is likely to evade effective review if left for consideration only after final judgment"; (6) whether the question is likely to recur; (7) "whether the application arises from a decision or order that is sufficiently final to position the case for intelligent review"; and (8) whether "the probable harm to the applicant should an immediate appeal be refused [outweighs] the probable harm to the other parties should an immediate appeal be entertained." *Id.* at 38-39.

BP and the Attorney General agree that all of these factors are worthy of our consideration in deciding whether to accept this appeal, and neither party proposes any addition to the list. We thus perceive no necessary pitfall in reviewing BP's application through the lens these factors provide. In so doing, though, we emphasize that we, like the First Circuit, do not take these factors to

be necessarily exhaustive considerations or "rigid rules." *Id.* at 39. The decision whether to grant leave to appeal remains a matter "committed to the informed discretion of the reviewing court," and the factors we have outlined are no more than considerations or guides to help inform that analysis, a set of analytical "buoys to mark [the] channels" of potential inquiry. *Id.*

Each factor favors granting review in this case. This case raises the important and unsettled legal questions whether CAFA's mass action provision applies to suits by a state attorney general; whether the "general public" exception covers such suits, *see* 28 U.S.C. § 1332(d)(11)(B)(ii)(III); and how, if at all, the "real party in interest" analysis pertains to such suits. The district courts of this circuit are likely to encounter these questions in future cases and will benefit from the development of a body of law on them. *Cf. Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1247 (10th Cir. 2009) (noting that the "the purpose of § 1453(c)(1) is to develop a body of appellate law interpreting CAFA" (brackets and quotation marks omitted)). Under the district court's remand order, meanwhile, this case promises to leave the ambit of the federal courts for good, precluding any other opportunity for BP to vindicate its claimed legal entitlement — purportedly granted by Congress — to have a federal tribunal adjudicate the merits. Further leaning in favor of taking this case is the fact that the district court's decision is carefully reasoned and the product of thorough adversarial testing, always a plus to an appellate undertaking. And though we do not mean in

any way to cast doubt on its rulings, or suggest how we might view the merits of the case, the district court's decision indisputably charted novel waters in this circuit on what appear to be eminently debatable legal questions. Not only do all these factors favor taking the appeal, in the balance we discern relatively little concomitant probable harm flowing from doing so. Though any additional process carries the cost of some delay that cannot be ignored, this case remains in its nascent stages; no discovery has been taken; and, as of yet, there appear to be no ongoing proceedings in the Oklahoma state courts with which we might interfere. The delay imposed by our review, thus, is not at the cost of grinding to a halt a case already much developed or busily advancing elsewhere.

\* \* \*

For all these reasons, we grant BP's application for leave to appeal. A separate order accompanying this opinion outlines the mechanics we will follow in taking up this appeal, as well as certain questions for the parties to consider in their briefs.