In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-8015

HUBERT E. WALKER, on behalf of
himself and all others similarly situated,

*Plaintiff-Petitioner,*

*v.*

TRAILER TRANSIT, INC.,

*Defendant-Respondent.*

Petition for Permission to Appeal from
the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-124-TWP-DKL — **Tanya Walton Pratt**, *Judge.*

SUBMITTED JULY 17, 2013 — DECIDED AUGUST 23, 2013

Before BAUER, CUDAHY, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Hubert Walker petitions for permission to appeal the district court's denial of his motion to remand this case to state court. *See* 28 U.S.C. § 1453(c)(1). Representing a class of truck owner-operators, Walker sued Trailer Transit,

Inc., a broker of trucking services, for breach of contract in Indiana state court. Trailer Transit removed the suit to federal court under the Class Action Fairness Act ("CAFA"), *id.* § 1332(d)(2). Walker moved to remand, contending that the removal was untimely.

The rules of procedure provide two different removal windows. First, a defendant has 30 days after receiving the plaintiff's initial pleading to file a notice of removal (or 30 days after receiving the summons if the initial pleading is not required to be served). *Id.* § 1446(b)(1). However,

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt … of … an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

*Id.* § 1446(b)(3). Under CAFA federal courts have original jurisdiction over class actions on behalf of more than 100 class members if the parties are minimally diverse and the amount in controversy exceeds $5 million. *Id.* § 1332(d)(2), (d)(5)(B). Walker argued that the notice of removal was untimely because it was filed more than 30 days after Trailer Transit "first ascertained" that the class's theory of damages could result in recovery of more than $5 million. The district judge disagreed and denied the motion to remand. Walker petitioned for permission to appeal.

We have never addressed the standard for determining when the 30-day time period for removal begins to run. Accordingly, we grant Walker's petition to appeal. On the

merits we affirm the district court's ruling. The 30-day removal clock is triggered by the defendant's receipt of a pleading or other paper that affirmatively and unambiguously reveals that the case is or has become removable. Here, Trailer Transit never received a pleading or other paper from Walker specifically disclosing the damages demand. Trailer Transit based its notice of removal on its own estimate of damages after Walker introduced a new theory of damages into the case in response to requests for admission. Because the removal clock never started to run, the district court properly denied the motion to remand.

## I. Background

This lawsuit concerns a lease agreement between Walker, who owns and operates a long-haul truck, and Trailer Transit, a broker of trucking services. Under the agreement Trailer Transit leased Walker's equipment, and Walker picked up and delivered shipments arranged by Trailer Transit. Trailer Transit was obligated to pay Walker 71% "of the gross revenues derived from use of" the truck, less "all items intended to reimburse [Trailer Transit] for special services." There are other exceptions to Trailer Transit's responsibility to share revenues, but they are not at issue here.

Walker filed a class-action complaint in Indiana state court asserting that Trailer Transit violated its lease agreements with him and hundreds of other truckers. Walker alleged that Trailer Transit charged "add-on fees" to customers that exceeded the cost of providing special services. Because those fees were allegedly not "intended to reimburse" Trailer

Transit, Walker contended that the truckers were entitled to a portion of the fees under the lease agreement. The complaint repeatedly maintains that the truckers are entitled to 71% of Trailer Transit's "profits" from the fees. For example, Walker alleged that "Trailer Transit billed the customer $1665 for truck 'escort services' … that cost Trailer Transit only $200 (a profit of $1465), yet Trailer Transit retained 100% of the charge."

The state court certified the case as a class action, and the case proceeded to briefing on Trailer Transit's motion for summary judgment. In its motion Trailer Transit argued that the plaintiffs' theory of damages tied to a percentage of "profits" was untenable. According to Trailer Transit, there were only two feasible options for recovery: either a fee was "intended to reimburse" Trailer Transit so it could keep the whole fee, or a fee was not "intended to reimburse" Trailer Transit so the truckers would be entitled to 71% of the entire fee. But the complaint alleged that truckers were entitled to 71% of the *profits* from the fee. The language of the lease agreement, Trailer Transit argued, could not support an interpretation entitling the class to that measure of damages.

Walker's response, filed on November 19, 2012, included this explanation of how a jury could award damages based on *either* Trailer Transit's "profits" *or* based on the entire "fees":

> A reasonable jury could draw at least two conclusions from the circumstance where Trailer Transit charged an Add-On Fee in an amount that grossly exceeded its costs: (A) the jury could conclude that the entire fee was a scam fee that was not 'intended to reimburse' Trailer Transit,

and therefore that 71% of the entire fee should have been paid to the Drivers; or (B) the jury could conclude that the portion of the fee that exceeded Trailer Transit's costs was a scam fee that was 'not intended to reimburse' it, and therefore that 71% of that excess should have been paid to the Drivers. The Plaintiff has never limited his theory of recovery to a single one of these two possibilities, and both are consistent with the language of the Lease Agreement.

Soon after this response was filed, Trailer Transit's attorney sent an e-mail to Walker's attorney seeking to clarify whether the class was seeking 71% of the entire fees, rather than just 71% of Trailer Transit's profits from the fees. Walker's attorney responded by copying and pasting the above passage from the summary-judgment response. Trailer Transit then served requests for admission on Walker formally requesting clarification of the theory of damages. On December 21, 2012, Walker responded, admitting that the class was seeking 71% of the entire fees.

Within 30 days of receiving Walker's response to the requests for admission, Trailer Transit filed a notice of removal under CAFA.[1] *See* 28 U.S.C. § 1453(b). The notice of removal

---

[1] The notice of removal was filed on January 22, 2013, which under the time-counting rules is deemed the 30th day after Walker's response to the requests for admission. The 30th calendar day after the response was Sunday, January 20, 2013, and the following day was Martin Luther King, Jr. Day, a federal holiday. Therefore, if Walker's response to the requests for

(continued...)

included an affidavit from a Trailer Transit executive estimating the total damages at stake. According to the executive, the possible damages could exceed $5 million if the class sought 71% of the entire amount of the disputed fees, but not if the class sought 71% of the profits from those fees. Walker did not contest this analysis and acknowledged that CAFA's amount-in-controversy requirement was satisfied. But he moved to remand on timeliness grounds, arguing that Trailer Transit became aware earlier in the litigation that the class sought 71% of the entire amount of the disputed fees and thus satisfied the amount-in-controversy requirement. Specifically, Walker argued that the 30-day clock started when he filed his summary-judgment response, or at the latest, when his attorney responded to Trailer Transit's e-mail—both of which occurred more than 30 days before removal.[2] The district court denied remand, concluding that neither Walker's summary-judgment response nor his counsel's e-mail clearly disclosed that the damages potentially exceeded $5 million.

---

(...continued)
admission started the 30-day removal clock, Tuesday, January 22, 2013, was the 30th day. *See* FED. R. CIV. P. 6(a)(1)(C).

[2] In his petition for leave to appeal, Walker argues that his complaint was sufficient to trigger the 30-day removal clock under 28 U.S.C. § 1446(b)(1). The district court held that Walker "implicitly conceded" during oral argument that his complaint was not sufficient by arguing that the earliest date on which the amount in controversy should have been "ascertainable" was the date of his summary-judgment response. Like the district court, we hold Walker to that concession.

## II. Analysis

This appeal concerns the jurisdictional damages threshold for removal under CAFA, which requires an amount in controversy in excess of $5 million. 28 U.S.C. § 1332(d)(2), (d)(5)(B). Because the case was removed under CAFA, we have discretion to review the district court's denial of Walker's remand motion. *See id.* § 1453(c)(1). Trailer Transit urges us not to accept the appeal because it turns on the time limits specified in the general removal statute, 28 U.S.C. § 1446, which is not "an important CAFA-related question." *BP Am., Inc. v. Oklahoma ex rel. Edmondson*, 613 F.3d 1029, 1034 (10th Cir. 2010). But when a petition meets the requirements of 28 U.S.C. § 1453(c)(1)—as this one does because it involves the question of remanding a class action—we are not required to limit our review solely to CAFA-specific issues. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (7th Cir. 2005) ("[W]e are free to consider any potential error in the district court's decision, not just a mistake in application of the Class Action Fairness Act. When a statute authorizes interlocutory appellate review, it is the district court's entire decision that comes before the court for review.").

This case presents the opportunity to clarify the standard for determining when the 30-day time limit under § 1446(b)(3) is triggered—an issue that has divided district courts in this circuit. *See Kohl's Dep't Stores, Inc. v. Perkowitz & Ruth Architects*, No. 10-CV-378, 2010 WL 4386677, at *2–3 (E.D. Wis. Oct. 28, 2010) (describing divergent standards district courts have applied). Accordingly, we grant the petition for permission to appeal. *See Koral v. Boeing Co.*, 628 F.3d 945, 946 (7th Cir. 2011)

(granting petition to appeal under CAFA because "the appeal presents novel issues"). Because the parties' submissions on the petition adequately present the issue, we proceed directly to the merits.

The general removal statute includes two different 30-day time limits for removal. The first applies to cases that are removable based on the initial pleading. In such a case, the notice of removal "shall be filed within 30 days after the receipt by the defendant … of a copy of the initial pleading setting forth the claim for relief" or within 30 days of service of the summons "if such initial pleading has then been filed in court and is not required to be served on the defendant." 28 U.S.C. § 1446(b)(1). However,

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

*Id.* § 1446(b)(3).[3]

The short removal time limit forces the defendant to make a prompt decision about removal once a pleading or other

---

[3] In addition to the 30-day time limits, diversity cases must be removed within "1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). The one-year time limit for removal does not apply to CAFA cases like this one. *See id.* § 1453(b).

litigation document provides clear notice that the predicates for removal are present. *See Price v. Wyeth Holdings Corp.*, 505 F.3d 624, 628–29 (7th Cir. 2007); *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982) ("The purpose of the 30-day limitation is twofold: to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court.").

It's clear that the 30-day removal clock is triggered *only* by the defendant's receipt of a pleading or other litigation paper facially revealing that the grounds for removal are present. Every circuit that has addressed the question of removal timing has applied § 1446(b) literally and adopted some form of a bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper and, with respect to the jurisdictional amount in particular, requires a specific, unequivocal statement from the plaintiff regarding the damages sought. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 399 (5th Cir. 2013) (clock begins running only when initial pleading "affirmatively reveals on its face" that the plaintiff seeks damages sufficient for federal-court jurisdiction (internal quotation marks and emphasis omitted)); *Kuxhausen v. BMW Fin. Servs.*, 707 F.3d 1136, 1139 (9th Cir. 2013) (clock begins running only when the basis for removal is "revealed affirmatively in the initial pleading" (internal quotation marks omitted)); *Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 38 (2d Cir.

2010) (clock begins running only when "the plaintiff serves the defendant with a paper that explicitly specifies the amount of monetary damages sought"); *In re Willis*, 228 F.3d 896, 897 (8th Cir. 2000) (clock begins running "only when the complaint explicitly discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount"); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998) (clock begins running only upon "clear and unequivocal notice from the pleading itself, or a subsequent 'other paper' " that case is removable); *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162–63 (4th Cir. 1997) (grounds for removal must be "apparent within the four corners of the initial pleading or subsequent paper").

We follow the lead of our sister circuits and now adopt the same approach. The 30-day removal clock does not begin to run until the defendant receives a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present. With respect to the amount in controversy in particular, the pleading or other paper must specifically disclose the amount of monetary damages sought. This bright-line rule promotes clarity and ease of administration for the courts, discourages evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers, and reduces guesswork and wasteful protective removals by defendants.[4]

---

[4]  We note that all three states in our circuit restrict the plaintiff's ability to quantify the amount of damages sought in the complaint. *See* WIS. STAT. § 802.02(1m) ("With respect to a tort claim seeking the recovery of money, the demand for judgment may not specify the amount of money the pleader

(continued...)

Walker insists that the 30-day removal clock should begin to run the first moment it becomes possible for the defendant to remove the case. No court of appeals has adopted this rule, and for good reason. The moment a case becomes removable and the moment the 30-day removal clock begins to run "are not two sides of the same coin." *Kuxhausen*, 707 F.3d at 1141 n.3; *see also Mumfrey*, 719 F.3d at 400 n.13. Walker's proposed rule conflates the timeliness question with the factual inquiry into whether the case is substantively appropriate for removal. Whether the jurisdictional prerequisites are in fact met is a separate determination and often involves consideration of materials outside the state-court pleadings. The removing defendant has the burden of proving the jurisdictional predicates for removal. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006) ("Because [the removing defendant] is the proponent of jurisdiction, it has the burden of showing by a preponderance of the evidence facts that suggest the amount-in-controversy requirement is met.").

In contrast, the timeliness inquiry is limited to the examining contents of the clock-triggering pleading or other litigation paper; the question is whether *that document*, on its face or in combination with earlier-filed pleadings, provides specific and

---

[4] (...continued)
seeks."); 735 ILL. COMP. STAT. 5/2-604 ("[N]o ad damnum may be pleaded except to the minimum extent necessary to comply with the circuit rules of assignment where the claim is filed."); IND. R. TRIAL PRO. 8(A)(2) ("[I]n any complaint seeking damages for personal injury or death, or seeking punitive damages, no dollar amount or figure shall be included in the demand."). Jurisdictional requests for admission are a common device for determining whether the amount-in-controversy minimums are met.

unambiguous notice that the case satisfies federal jurisdictional requirements and therefore is removable. Assessing the timeliness of removal should not involve a fact-intensive inquiry about what the defendant subjectively knew or should have discovered through independent investigation. *See Kuxhausen*, 707 F.3d at 1140–41; *Lovern*, 121 F.3d at 162. Again, as the text of the rule itself makes clear, the 30-day clock is triggered by pleadings, papers, and other litigation materials actually received by the defendant or filed with the state court during the course of litigation. *See* 28 U.S.C. § 1446(b)(1) (first 30-day removal period begins to run once defendant receives "a copy of the initial pleading" or upon service of the summons "if such initial pleading has then been filed in court and is not required to be served on the defendant"); *see id.* § 1446(b)(3) (second 30-day removal period begins to run "after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper").

And with respect to § 1446(b)(3) in particular, the text keys the 30-day removal clock to the defendant's receipt of a pleading or other paper "from which it may first be ascertained" that the case is or has become removable. As applied to the amount-in-controversy requirement, the clock commences *only* when the defendant receives a post-complaint pleading or other paper that affirmatively and unambiguously specifies a damages amount sufficient to satisfy the federal jurisdictional minimums. This approach conforms to the standard adopted by our sister circuits. *See Mumfrey*, 719 F.3d at 400; *Kuxhausen*, 707 F.3d at 1139; *Moltner*, 624 F.3d at 38; *Willis*, 228 F.3d at 897; *Akin*, 156 F.3d at 1036; *Lovern*, 121 F.3d at 162–63.

Applying this standard, we can resolve this appeal easily. Neither Walker's summary-judgment response nor the follow-up e-mail was sufficient to start the removal clock. The summary-judgment response intimated for the first time that the class was seeking 71% of the entire disputed fees rather than just 71% of Trailer Transit's profits from those fees. While this passage alerted Trailer Transit that the class might be pursuing a new theory of damages, it was not unambiguous; nor did it affirmatively reveal that the damages could be greater than $5 million. The follow-up e-mail from Walker's counsel did not resolve the ambiguity; it simply reiterated what was in the summary-judgment response.

The earliest possible trigger for the removal clock was Walker's response to Trailer Transit's requests for admission seeking formal clarification of the theory of damages. In that response Walker confirmed that the class was indeed seeking damages based on a percentage of the total disputed fees. Even that document, however, did not affirmatively specify a damages figure under the class's new theory. So the removal clock never actually started to run. Although Trailer Transit filed its notice of removal within 30 days of receiving that response, the removal was not based on Walker's response to the requests for admission alone; it took Walker's admission *and* an estimate from a Trailer Transit executive to show that the jurisdictional limits were met. Removal was not untimely, and the district court properly denied the motion to remand.

For the foregoing reasons, we GRANT the petition to appeal and AFFIRM the decision of the district court.