In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 21-2533

RANITA RAILEY, individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

*v.*

SUNSET FOOD MART, INC.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-06758 — **Harry D. Leinenweber**, *Judge.*

_____

ARGUED SEPTEMBER 27, 2021 — DECIDED OCTOBER 15, 2021

_____

Before EASTERBROOK, KANNE, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Ranita Railey clocked in and out of work at the Sunset Food Mart in Lake Forest, Illinois, by placing her hand on a biometric scanner. She later brought a class action in state court alleging violations of the Illinois Biometric Information Privacy Act. Two years into litigation, Sunset removed the case to federal court. The district court found Sunset's removal untimely. Exercising the appellate

jurisdiction Congress provided in the Class Action Fairness Act, we affirm the district court's order remanding to state court.

**I**

A

Ranita Railey began working at Sunset Food Mart, a small Illinois grocery chain with five stores, in January 2016. Three years later she filed a putative class action on behalf of herself and other Sunset employees alleging that the company's use of a biometric time clock violated the Illinois Biometric Information Privacy Act. Railey's complaint survived dismissal and proceeded to discovery, when, in November 2020, Sunset removed the case to federal court.

The company rooted the removal in its view that Railey's claims were completely preempted by the Labor Management Relations Act. See, e.g., *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968) (authorizing removal on a complete preemption theory); *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 904–05 (7th Cir. 2019) (recognizing the same basis for removal in the context of the Railway Labor Act). Sunset explained the timing of the removal by pointing to an interrogatory response it received from Railey in October 2020 in which she confirmed her membership in a labor union. Several months later, in January 2021, Sunset filed what it called a "Supplemental Statement in Support of Jurisdiction" urging the district court to find that the Class Action Fairness Act also supported removal. For her part, Railey sought to have the case remanded to state court.

B

After extensive briefing, the district court found Sunset's removal untimely and ordered the case remanded to state court.

First, the district court considered the timeliness of Sunset's preemption-based removal. The court concluded that the case was not initially removable because nowhere in her state court complaint did Railey allege membership in a union. The absence of such an allegation, the district court reasoned, meant that the ordinary 30-day time limit for removal in 28 U.S.C. § 1446(b)(1) did not apply.

From there the district court focused on whether the information the parties exchanged in discovery alerted Sunset to a basis for removal and, if so, when. The court saw that as the right question because, in its view, the case was not initially removable and Congress imposes on a defendant a second 30-day removal window upon receipt of an "amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3); see also *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013) (explaining that § 1446(b)'s supplemental clock begins to run when "the defendant receives a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present").

After surveying the parties' filings and discovery exchanges, the court focused on Sunset's January 2020 response to Railey's first request for the production of documents. In that response, Sunset agreed to produce its agreements with "the Independent Food Clerks Union, of which Plaintiff was

affiliated prior to her January 1, 2018 promotion to Assistant Deli Manager." The district court determined that Sunset's response was the type of "paper" providing "unambiguous notice" that the Labor Management Relations Act applied to and indeed may completely preempt Railey's claims—information sufficient to trigger the start of the 30-day clock in § 1446(b)(3). Sunset's removal in November 2020—nearly nine months after the company sent the relevant discovery response—came too late.

Second, the district court considered Sunset's alternative contention that the Class Action Fairness Act supplied an independent basis for removal. On this front, the company contended that Railey's change in domicile from Illinois to Georgia as the litigation proceeded in state court meant the parties had become minimally diverse and thus the case was removable under 28 U.S.C. § 1332(d)(2)(A). The district court disagreed, finding that here, too, Sunset's removal was untimely.

Section 1332(d)(7) instructs district courts to evaluate the citizenship of members of a proposed plaintiff class "as of the date of filing of the complaint or amended complaint" or, alternatively, "as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction." Based on its prior determination that Sunset's January 2020 discovery response was a paper indicating federal subject matter jurisdiction, the district court concluded that this same acknowledgement by Sunset also opened a 30-day window under § 1332(d)(7) for the company to reevaluate Railey's domicile and, if appropriate, remove on diversity grounds. But Sunset waited 11 months, until January 15, 2021, before invoking Class Action Fairness Act

minimal diversity. So, on this basis, too, the district court concluded that Sunset's removal was untimely.

We then granted Sunset's request to appeal the district court's remand order. See 28 U.S.C. § 1453(c)(1).

## II

Ordinarily we lack jurisdiction to review a district court's remand order. See *id.* § 1447(d). But Congress established an exception for certain class actions in the Class Action Fairness Act. See *id.* § 1453(c)(1). With that enactment supplying our jurisdiction, we begin by assessing Sunset's contention that its removal was both timely and proper based on Railey's change of domicile (and the creation of minimal diversity) in February 2020.

## A

The Class Action Fairness Act provides federal district courts with original jurisdiction over class actions if the putative class has at least 100 members, the parties are minimally diverse, and the value of the aggregated claims exceeds $5 million. See *id.* § 1332(d). The statute also makes class actions more easily removable. See *id.* § 1453(b) (providing that § 1446's one-year limitation on removal in diversity cases does not apply and eliminating both the requirement that defendants agree unanimously to removal and the prohibition on removal by so-called "home state" defendants); see also *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (observing that there is "no antiremoval presumption attend[ing] cases invoking CAFA," especially given Congress's purpose of "facilitat[ing] adjudication of certain class actions in federal court").

Removal is not a one-shot proposition. A defendant may remove even a previously remanded case if subsequent pleadings or litigation events reveal a new basis for removal. See, e.g., *Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 782–83 (7th Cir. 1999) (explaining that "[n]othing in § 1446 forecloses multiple petitions for removal" as circumstances can change, "for example, by dismissal of a party whose presence spoiled complete diversity of citizenship, or by a disclosure that the stakes exceed the jurisdictional amount"). And separate removal attempts are governed by separate removal clocks. Put more directly, even if the district court were correct that Sunset's January 2020 discovery response triggered a 30-day clock for the company to file a preemption-based notice of removal, that window does not govern the timeliness of the subsequent and distinct diversity-based notice of removal under the Class Action Fairness Act.

The district court misinterpreted § 1332(d)(7) as compelling a different conclusion. In § 1332(d)(7), Congress recognized that a putative class member's citizenship is not set in stone. Indeed, that very provision instructs courts to reevaluate the class's makeup at the time the case becomes removable under the terms of the Class Action Fairness Act. By Sunset's account, that occurred when Railey moved out of Illinois and changed her domicile to Georgia in February 2020. But the district court committed error by reading § 1332(d)(7) to impose a 30-day window for a defendant to reevaluate citizenship whenever a case is removable on non-class action grounds, or to otherwise tie the timeliness of Sunset's class-action based removal to the 30-day clock governing its preemption-based removal under § 1446(b)(3). The bases for removal were different—independent of one another—and so

were the clocks that measured the timeliness of Sunset's removal.

The proper approach, in short, is to evaluate Sunset's removal under the Class Action Fairness Act on its own terms, not with some dependence on or connection with the altogether different basis for removal rooted in a theory of complete preemption under the Labor Management Relations Act.

Recognize further that "[t]he moment a case becomes removable and the moment the 30-day removal clock begins to run are not two sides of the same coin." *Walker*, 727 F.3d at 824 (internal quotations and citation omitted). A plaintiff may trigger a removal clock—and protect itself against a defendant's strategic maneuvering—by "affirmatively and unambiguously" disclosing facts establishing federal jurisdiction in an initial pleading or subsequent litigation document. *Id.* at 824. But if a defendant independently discovers that the case is removable under the terms of the Class Action Fairness Act, it may remove the case at whatever point it deems appropriate, regardless of whether the window for removal on another basis already opened and closed. See, e.g., *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 146–47 (2d Cir. 2014) (concluding that "removal is permissible outside of the 30-day periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) where a defendant's own investigation yields evidence of removability"); *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) (same).

That is how things unfolded here. Sunset informed the district court that it discovered Railey's change in domicile in January 2021 through its own social media investigation into her domicile—not through a pleading, motion, or other paper

that would have triggered § 1446(b)(3)'s 30-day clock. A few days later the company advanced its alternative theory of federal jurisdiction—removal under the Class Action Fairness Act based on newly discovered facts showing the presence of minimal diversity. Assuming that Sunset is correct both that Railey's domicile (and thus her citizenship) has changed and that this change created minimal diversity under the statute, its notice of removal was timely.

In the end, though, the district court was right to remand the case. Congress created an exception to Class Action Fairness Act jurisdiction for "home-state controversies." The exception directs that district courts "shall decline to exercise jurisdiction" over a class action in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Railey invokes this precise exception, observing that both Sunset and all of the putative class members (per her proposed class definition) are Illinois citizens.

Railey is right that these circumstances precluded Sunset's removal under the Class Action Fairness Act. By limiting the class to Illinois citizens, Railey eliminated any concern that any Sunset employees domiciled outside the state comprise greater than one-third of the class and all but "guaranteed that the suit would remain in state court." *In re Sprint Nextel Corp.*, 593 F.3d 669, 676 (7th Cir. 2010).

The company's arguments against the exception's applicability—that Railey has defined herself out of the class; that she waived this position by not raising it below; that a class pursuing Biometric Information Privacy Act claims cannot be restricted to Illinois citizens; and that the individual, subjective

nature of citizenship creates a predominance issue precluding class certification—are unavailing. Railey has brought a putative class action on behalf of Illinois citizens against a small Illinois grocery chain under Illinois law, and "it doesn't take any evidence to establish that [Illinois] citizens make up at least two-thirds of the members of a class that is open only to [Illinois] citizens." *Id.* And even accepting that the home-state controversy exception is not jurisdictional, we believe the proper course is to follow Congress's direction in § 1332(d)(4)(B) and affirm the district court's remand order.

B

We close with a few words on the district court's assessment of Sunset's preemption-based removal of Railey's claims. We can address the issue because, alongside exercising the appellate jurisdiction supplied by § 1453(c)(1), "we are free to consider any potential error in the district court's decision." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (7th Cir. 2005). Our recent decision in *Fernandez v. Kerry, Inc.* suggests that Railey's claims may, in fact, be preempted by the Labor Management Relations Act. No. 21-1067, 2021 WL 4260667, at *1–2 (7th Cir. 2021). On these facts, however, we have little difficulty concluding the district court was right to grant Railey's motion to remand. Our reasoning travels a different path, though.

Recall the general rule. If the case stated by a plaintiff's initial pleading is removable, a defendant has 30 days after the pleading is served to file its notice of removal. 28 U.S.C. § 1446(b)(1). That short time limit "forces the defendant to make a prompt decision about removal once a pleading or other litigation document provides clear notice that the predicates for removal are present." *Walker*, 727 F.3d at 823.

But defendants are not required to engage in guesswork about a plaintiff's legal theory or exhaustively scrutinize ambiguous pleadings to discern whether the plaintiff is trying to obscure a basis for federal jurisdiction. If it is not clear from the face of the complaint that a plaintiff is seeking more than $75,000 in damages, for example, the removal clock will not begin to run until the defendant receives a pleading or other paper that conveys a qualifying damages amount. *Id.* at 825. This rule "promotes clarity and ease of administration for the courts," discourages tactical evasiveness by plaintiffs, and obviates the need for "wasteful protective removals by defendants." *Id.* at 824.

On the other hand, a defendant cannot bury its head in the sand or feign ignorance about information within its control. If removability turns on information about the defendant that the defendant itself knows or can readily ascertain, the 30-day clock in § 1446(b)(1) begins to run. This is so because "[w]hen the defendant has vital knowledge that the plaintiff may lack, a burden that induces the removing party to come forward with the information—so that the choice between state and federal court may be made accurately—is much to be desired." *Brill*, 427 F.3d at 447–48.

Sunset missed its preemption-based removal window here. Railey's complaint included her name, her dates of employment, the job titles she held during the relevant period, and her work locations. Sunset acknowledged at oral argument that this information was sufficient to determine, either at the time of service or shortly after, that Railey was represented by a union. The acknowledgment did not surprise us, for the company operates five grocery stores in Illinois and surely knows, or can discern with ease, whether this or that

employee works within a unit subject to a collective bargaining agreement. Railey's class definition also gave Sunset clear notice that the proposed class included all of and indeed only the company's Illinois employees—many, if not most, of whom are subject to collective bargaining arrangements. Based on this information, diligent counsel had everything necessary to recognize that the Labor Management Relations Act may preempt Railey's or the class's claims.

Do not read this opinion to impose any meaningful burden on defendants. We stand fully by our prior determination that district courts are not required to engage in a "fact-intensive inquiry about what the defendant subjectively knew or should have discovered" about the plaintiff's case to assess the timeliness of a defendant's removal. *Walker*, 727 F.3d at 825. We add only the straightforward observation that, when it comes to removal, a defendant can be held to information about its own operations that it knows or can discern with ease. That is so here, for the circumstances are akin to asking a defendant corporation whether it knows its place of incorporation and principal place of business. With hardly any effort, Sunset could have discerned—from the moment it received the original complaint—that a collective bargaining agreement governed its employment relationship with Ranita Railey and bore on the claims of the putative class. That reality means that the 30-day removal clock in § 1446(b)(1) began to tick when Railey served her complaint in February 2019. Sunset's November 2020 preemption-based notice of removal was therefore untimely, and the district court's remand order was appropriate.

For these reasons, we AFFIRM.