FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHANNA LEE KUXHAUSEN, individually and on behalf of all others similarly situated, *Plaintiff-Appellee*, | No. 12-57330 |
| | D.C. No. 8:12-cv-00366-AG-JPR |
| v. | |
| BMW FINANCIAL SERVICES NA LLC, a Delaware limited liability company, *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
February 6, 2013—Pasadena, California

Filed February 25, 2013

Before: Diarmuid F. O'Scannlain, Stephen S. Trott,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Class Action Fairness Act (CAFA)

The panel reversed the district court's remand to state court of plaintiff's proposed class action involving a BMW California automobile dealership.

Plaintiff alleged that defendant's removal was untimely because it was filed more than thirty days after the filing of the original state complaint.  The panel held that because the amount in controversy was not sufficiently stated by the initial pleading, plaintiff had not pled all the facts necessary for diversity jurisdiction under the Class Action Fairness Act, and therefore the removal clock under Section 1446(b) was not triggered.  The panel noted that nothing in plaintiff's complaint indicated the value, even as an approximation, of other class members' vehicle financing contracts, and BMW was not obligated to supply information which plaintiff had omitted.

The panel further held that in light of its conclusion that BMW timely removed under Section 1446(b), it had no occasion to decide whether to join other circuits in recognizing a "revival exception," which according to BMW gave it another thirty days to remove when plaintiff expanded her suit from one strictly against a Southern California dealership to one against all California-BMW dealerships.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Michael J. Hassen, Jeffer Mangels Butler & Mitchell LLP, San Francisco, California, for Defendant-Appellant.

Christopher P. Barry (argued), Hallen D. Rosner and Angela J. Patrick, Rosner, Barry & Babbitt, LLP, San Diego, California, for Plaintiff-Appellee.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether the defendant timely removed this proposed class action involving a California automobile dealership to federal court.

**I**

**A**

Seeking to trade in her BMW sedan for a larger model, Shanna Kuxhausen visited Crevier Motors in Irvine, California. A salesperson for the dealership interested her in a BMW X3 sports utility vehicle (SUV). After learning about the SUV's features and taking a test drive, Kuxhausen and Crevier worked out the preliminary financing details. Kuxhausen then signed a Retail Installment Sale Contract (RISC or "contract"), which structured her purchase over a sixty-month term. In the "Itemization of the Amount Financed Section" of the RISC appeared the notation "N/A" (not applicable) on a line designated for registration and titling fees. On the reverse side of the RISC was, allegedly

unbeknownst to Kuxhausen, an agreement to arbitrate all disputes.

Kuxhausen took the SUV home. Around January 6, 2009, Crevier telephoned Kuxhausen with the news that because it had failed to obtain her financing, she would need either to return her purchase or make a down payment as part of a new financing deal. A few days later, she returned to the dealership, rescinded her RISC, and executed a new one. The new RISC had a top line of $52,309.13, and the same "N/A" notation and agreement to arbitrate as the original. Although executed in January, the new RISC was dated December 30, 2008—the date of her original contract. This time financing was successful, and sometime later Crevier transferred Kuxhausen's note to BMW Financial Services ("BMW"), a Delaware Limited Liability Corporation with its principal place of business in Ohio.

**B**

On August 30, 2011, Kuxhausen filed a class action complaint in Orange County Superior Court against Crevier and BMW as assignee and holder in due course of RISCs issued by the dealership. The complaint asserted ten California causes of action, including alleged violations of the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq*., and the Automobile Sales Finance Act, *id.* § 2981, *et seq*. The complaint proposed two class actions, each comprising Crevier customers who had financed their vehicles with an RISC over the last four years. Class One was composed of customers with backdated RISCs that included allegedly unconscionable arbitration clauses. Class Two covered customers whose RISCs "falsely state[d] [that] registration transfer, and/or titling fees[,] were 'not

applicable' to their purchase." Kuxhausen, although not specifying a total sum for class-wide damages, sought "statutory damages of up to $1,000 per consumer" and $5,000 for senior-citizen consumers under the CLRA. She also sought "restitution and/or rescission of any RISC entered into by any Class Member."

The case proceeded apace in Superior Court with BMW unsuccessfully attempting to compel arbitration. In a Case Management Conference Statement dated January 20, 2012, Kuxhausen stated that she "may amend to plead a separate class on behalf of all California consumers whose contracts were assigned to BMW Financial, regardless of the selling dealership."

On February 9, 2012, Kuxhausen filed a First Amended Complaint along those lines; a new group of all California-BMW purchasers whose RISCs had failed to disclose registration or titling fees was added as a third class. Invoking the diversity jurisdiction provision of the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d), BMW filed a notice of removal in the District Court for the Central District of California on March 9, 2012. In that notice of removal, BMW claimed that a search of its business records had revealed that the number of RISCs in Class Three far exceeded 100, and that "the total dollar amount of RISCs that fall within the scope of [Kuxhausen's] Class 3" exceeded ten million dollars. It also claimed that, given the size of the newly added Class Three, a minimum of $1,000 in statutory damage per purchaser would itself cause the amount in controversy to total more than ten million dollars.

Kuxhausen moved to remand within the prescribed period, arguing that BMW's March 9 removal was untimely

since it had been more than thirty days after the original state complaint's August filing. The district court granted the motion. BMW then sought leave to appeal the remand order under CAFA, which we granted on December 27, 2012. *See* 28 U.S.C. § 1453(c). Consistent with Congress's mandate, this decision is being rendered "not later than 60 days" from that grant. *Id.*

## II

BMW contends that its March removal was indeed timely because the face of Kuxhausen's original state complaint did not contain all the facts necessary for diversity jurisdiction under CAFA.

## A

The mechanics and requirements for removal are governed by 28 U.S.C. § 1446. Section 1446(b) "identifies two thirty-day periods for removing a case." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010). "The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face." *Id.* (internal quotation marks omitted). "The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." *Id.* (quoting § 1446(b)).

The statute does not define "removable." *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). Although every complaint is either capable of being removed or not, for the purpose of assessing timeliness we do not treat

the concept as a strict dichotomy. Rather, some pleadings are "indeterminate" in the sense that the face of the complaint does not make clear whether the required jurisdictional elements are present. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 693 (9th Cir. 2005). To avoid saddling defendants with the burden of investigating jurisdictional facts, we have held that "the ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin." *Id.* at 695. Removals invoking CAFA jurisdiction are equally subject to this rule. *See, e.g.*, *Carvalho*, 629 F.3d at 886.

**B**

Federal jurisdiction under CAFA has three elements: (1) there must be minimal diversity of citizenship between the parties, (2) the proposed class must have at least 100 members and (3) the amount in controversy must "exceed[] the sum or value of $5,000,000."[1] *See* 28 U.S.C. § 1332(d). Although BMW concedes that the first criterion was satisfied, it contends that the district court erred in concluding that Kuxhausen's original complaint revealed the requisite class size or that the dispute concerned over five million dollars.

---

[1] These elements are the full extent of what subject matter jurisdiction demands. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007). Although CAFA carves out exceptions to the district court's exercise of jurisdiction, the obligation to raise and prove that those exceptions apply—even the mandatory "local controversy" and "home-state controversy" ones—rests on the party seeking remand. As a result, we have no charge to consider those possibilities sua sponte. *See id.*

**1**

As to numerosity, we reject BMW's contention out of hand. BMW cites as proof of indeterminacy the fact that the complaint stated that the "exact number" of class members was unknown and that Kuxhausen alleged being "one of many customers." Yet, the first paragraph of the complaint states that Kuxhausen is seeking to "provide remedies for hundreds of affected consumers." We agree with the district court that this was enough. No investigation, "subjective knowledge," or "further inquiry" was necessary for BMW to understand that "hundreds," by definition, means at least 200. *Carvalho*, 629 F.3d at 886; s*ee Tompkins v. Basic Research LL*, No. S-08-244 LKK/DAD, 2008 WL 1808316, at *3 (E.D. Cal. Apr. 22, 2008) (CAFA numerosity satisfied because the allegation "a class of 'thousands of persons'" implies "a logical minimum of 2,000 class members").

**2**

BMW next argues that the first thirty-day period did not start because an "examination of the four corners of the applicable pleading[]" did not reveal that the amount in controversy exceeded five million dollars. *Carvalho*, 629 F.3d at 886 (quoting *Harris*, 425 F.3d at 694). In deeming this element of CAFA satisfied, the district court reasoned that, given 200 class members and given Kuxhausen's demand for "rescission of a vehicle contract exceeding $50,000," there were class-wide damages "of at least $10,000,000."

BMW perceives two errors. First, it suggests that *Harris* and *Carvalho* freed defendants from the need to make this sort of mathematic calculation. As we explain below,

defendants need not make extrapolations or engage in guesswork; yet the statute "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001). Multiplying figures clearly stated in a complaint is an aspect of that duty. *See, e.g.*, *Carvalho*, 629 F.3d at 884 (noting that the "amount in controversy was at least \$12.5 million (*i.e.*, \$25,000 times 500 potential plaintiffs)").[2]

BMW's second challenge is more substantial. It correctly observes that lurking in the district court's analysis was an implicit premise not furnished by the complaint. Nowhere in that pleading does Kuxhausen allege the value, even as an approximation, of other class members' vehicle financing contracts. Kuxhausen argues that BMW should have consulted its business records to identify a representative valuation, a task it did perform after receiving the amended complaint.

---

[2] The general rule is that the amount in controversy represents "an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). BMW has argued that the full RISC value should not be viewed as in controversy because a customer's rescission would involve some accompanying offset for depreciation of their vehicle.

Citing an older precedent of ours, the Sixth Circuit has expressly rejected that argument. *See Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 (6th Cir. 2000) (concluding that "in cases where a plaintiff seeks to rescind a contract, the [automobile] contract's entire value, without offset, is the amount in controversy") (collecting cases, including *Savarese v. Edrick Transfer & Storage, Inc.*, 513 F.2d 140, 142 (9th Cir. 1975)). We need not decide whether to endorse this view, though, because even using the full contract price as the amount in controversy, we conclude that Kuxhausen's original complaint was not removable on its face.

In *Harris*, a non-CAFA case, the plaintiffs made a similar demand. They argued that the defendant "should have looked in its files within the first thirty days" to discover that a named defendant whose presence in the suit frustrated complete diversity of citizenship had died, and therefore should have recognized that the case was immediately removable under 28 U.S.C. § 1332(a). *Harris*, 425 F.3d at 696. Preferring a clear rule, and unwilling to embroil the courts in inquires "into the subjective knowledge of [a] defendant," we declined to hold that materials outside the complaint start the thirty-day clock. *Id.* at 695 (quoting *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997)). Applying that principle here, we conclude that BMW was not obligated to supply information which Kuxhausen had omitted.

However, that does not fully resolve whether the amount in controversy was "stated by the initial pleading." 28 U.S.C. § 1446(b). The district court also was influenced by the fact that for a 200 member class, the average contract price per vehicle needed only to exceed $25,000 in order to put greater than five million dollars in controversy. Presumably, it thought that sum was a plausible-enough guess for a case involving German luxury automobiles, perhaps doubly so since Kuxhausen's individual vehicle contract was more than twice that amount. The fact remains, however, that we "don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove." *Durham*, 445 F.3d at 1251. This principle helps avoid a "Catch–22" for defendants desirous of a federal forum. By leaving the window for removal open, it forces plaintiffs to assume the costs associated with their own indeterminate pleadings. That is only fair after all, because—even under CAFA—"the burden is on the party

removing the case from state court to show the exercise of federal jurisdiction is appropriate." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010). Thus, because nothing in Kuxhausen's complaint "indicate[d] that the amount demanded *by each putative class member* exceed[ed] $25,000," it fell short of triggering the removal clock under Section 1446(b). *Carvalho*, 629 F.3d at 886.[3]

## III

Offering an alternative basis on which to affirm the judgment below, Kuxhausen claims that BMW's March 9 removal was untimely because it occurred more than thirty days after the company received a copy of an "order or other paper" from which removability could first be ascertained. 28 U.S.C. § 1446(b)(3). This contention implicates the second thirty-day period which enters the picture only when, as we have concluded in this case, the original complaint does not evidence its removability. *See Carvalho*, 629 F.3d at 885.

For this argument, Kuxhausen relies on two disclosures. First, she cites her June 17, 2011, demand letter. A state court demand letter generally can qualify as "'other paper' within the meaning of section 1446(b)." *Carvalho*, 629 F.3d at 885. Yet, since all the other neighboring statutory terms, "an amended pleading, motion, [or] order," cannot logically precede the initial pleading, we have held that "other paper"

---

[3] It bears repeating that whether a defendant can establish that federal jurisdiction exists and the question of when the thirty-day time period begins are not two sides of the same coin. Thus, Kuxhausen is incorrect in asserting that because BMW *could have* ventured beyond the pleadings to demonstrate removability *initially* (as it did later upon receipt of the First Amended Complaint) it was therefore *obligated* to do so.

does not embrace "any document received prior to receipt of the initial pleading." *Id.* at 885–86. Because Kuxhausen's demand letter was provided to BMW before she initiated her suit, it cannot trigger this thirty-day period.

Second, Kuxhausen cites her Case Management Conference Statement from January 2012. Shortly thereafter, the state court, orally, and then in writing, gave her permission to file an amended complaint along those lines. Yet, not even a draft of an amended complaint had been produced at that point. Had BMW removed on the basis of a not-yet-filed complaint, which may or may not ever have materialized, "it may well have subjected itself to fees and costs, and potentially Rule 11 sanctions, for filing a baseless notice of removal." *Durham*, 445 F.3d at 1251; *see also id.* ("After *Harris*, we no longer require defendants to take [a] blind leap. . . ."). At oral argument, counsel for Kuxhausen conceded that this logic—fatal to her position—was inescapable.

## IV

As a second alternative ground for remand, Kuxhausen argues that BMW's failure to attach her original complaint to its notice of removal is an infirmity warranting remand.

Section 1446(a) provides that the defendant must make a declaration attesting to the validity of its legal and factual assertions, as well provide a "statement of the grounds for removal, together with a copy of all process, pleadings, and orders served."

The district court declined to rest on this basis and so do we. Here, once Kuxhausen raised this objection in the district

court, BMW identified precisely where the missing complaint could be found in the record, and indicated that should the court desire copies of other state documents "[d]efendants will of course supply them." We agree with a leading treatise and with our sister circuits that "this *de minimis* procedural defect was curable" even "after expiration of the thirty-day removal period." *See Countryman v. Farmers Ins. Exch.*, 639 F.3d 1270, 1272 (10th Cir. 2011); *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011); 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3733 (4th ed. 2011) (explaining that "both the failure to file all the state court papers and the failure to provide the Federal Civil Rule 11 signature are curable in the federal court" (footnotes omitted)).[4]

## V

Because BMW timely removed under Section 1446(b), we reverse the district court's remand of Kuxhausen's proposed class action to Orange County Superior Court. In light of that conclusion, we have no occasion to decide whether to join other circuits[5] in recognizing a "revival

---

[4] As should be apparent from our discussion *supra* Part II, by contrast, Section 1446(b)'s "time limit is mandatory [such that] a timely objection to a late petition will defeat removal. . . ." *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980) (per curiam); *see also Seaton v. Jabe*, 992 F.2d 79, 81 (6th Cir. 1993).

[5] *Compare Johnson v. Heublein Inc.*, 227 F.3d 236, 241–44 (5th Cir. 2000); *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965–67 (7th Cir. 1982), *with Dunn v. Gaiam, Inc.*, 166 F. Supp. 2d 1273, 1279 (C.D. Cal. 2001) (noting the dearth of case law "*applying* the 'revival exception' to salvage an otherwise-waived statutory right of removal," and questioning its wisdom).

exception," which according to BMW gave it another thirty days to remove when Kuxhausen expanded her suit from one strictly against Crevier to one against all California-BMW dealerships.

**REVERSED and REMANDED.**