*14-455-cv*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2013
No. 14-455-cv

BRIAN CUTRONE AND JESSICA CERVONE, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,
*Plaintiffs-Appellees*,

*v.*

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of New York.
No. 13 CV 3075 — Eric N. Vitaliano, *Judge*.

ARGUED: APRIL 1, 2014
DECIDED: APRIL 17, 2014

Before: WALKER, CHIN, and DRONEY, *Circuit Judges*.

Appeal from an order of the United States District Court for the Eastern District of New York (Eric N. Vitaliano, *Judge*), holding the defendant-appellant's notice of removal untimely and remanding this putative class action to state court. We granted MERS's petition for permission to appeal the remand order and instructed the parties to address: (1) whether this Court's decision in *Moltner v. Starbucks Coffee Co.*, 624 F.3d 34 (2d Cir. 2010) (per curiam), which held that the removal "clocks" of 28 U.S.C. § 1446(b) are not triggered until the plaintiff files a document that explicitly specifies the amount of damages sought, applies to actions removed under the Class Action Fairness Act of 2005 ("CAFA") and (2) whether a defendant may remove a case under CAFA if neither of the two 30-day periods set forth in 28 U.S.C. §§ 1446(b)(1) and (b)(3) is triggered because the initial pleading and other documents are indeterminate with respect to removability but the defendant later asserts removability on the basis of its own investigation. We

answer both questions in the affirmative. We hold that *Moltner* applies to cases removed pursuant to CAFA and that the defendant-appellant's notice of removal was timely. Accordingly, we **VACATE** the district court's order and **REMAND**.

---

> CHARLES C. MARTORANA, Hiscock & Barclay, LLP, Buffalo, NY, *for Defendant-Appellant.*
>
> ANDREW S. LOVE (Samuel H. Rudman, Mark S. Reich, William J. Geddish, Susan K. Alexander, *on the brief*), Robbins Geller Rudman & Dowd LLP, San Francisco, CA, and Melville, NY, *for Plaintiffs-Appellees.*

---

DRONEY, *Circuit Judge*:

Defendant-appellant Mortgage Electronic Registration Systems, Inc. ("MERS") appeals from an order of the United States District Court for the Eastern District of New York (Eric N. Vitaliano, *Judge*) granting the motion of the putative class member plaintiffs-appellees ("plaintiffs"), to remand this case to New York

state court on the ground that MERS's notice of removal was untimely. The district court concluded that the plaintiffs' complaint contained sufficient information to put MERS on notice of the size of the putative class and amount in controversy to establish subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), and it held that MERS's notice of removal, filed more than 30 days after receipt of the complaint, was therefore untimely under 28 U.S.C. § 1446(b)(1).

We reverse and hold that, in Class Action Fairness Act ("CAFA") cases, the 30-day removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered until the plaintiff serves the defendant with an initial pleading or other paper that explicitly specifies the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5,000,000 can be ascertained. We also hold that where a plaintiff's papers fail to trigger the removal clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3), a defendant may remove a case when, upon its own independent

investigation, it determines that the case is removable; thus, the 30-day removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not the exclusive authorizations for removal in CAFA cases.

Here, neither the plaintiffs' initial complaint nor their response to MERS's demand for a bill of particulars in the state court explicitly specified the amount of damages sought or provided MERS with sufficient information to conclude the threshold amount in controversy was satisfied. The named plaintiffs' identification of their damages ($6,835.20) and their allegation that the potential class "includes hundreds, and likely thousands, of persons and entities," were not adequate to trigger the 30-day removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3). We also hold that MERS properly filed its notice of removal after determining upon its own investigation that the amount in controversy, number of plaintiffs, and diversity between itself and at least one plaintiff class member satisfied the CAFA subject matter jurisdictional requirements set forth in 28

U.S.C. § 1332(d). We accordingly VACATE the order of the district court and REMAND.

**BACKGROUND**

*The Parties and the Class Complaint*

Plaintiffs Brian Cutrone and Jessica Cervone filed the present putative class action against MERS in the Supreme Court of the State of New York, Kings County on February 20, 2013. Their complaint asserts causes of action against MERS under New York state law for common law breach of implied warranty, deceptive business practices in violation of New York General Business Law Section ("NYGBL") § 349, and false advertising in violation of NYGBL § 350, allegedly committed in connection with MERS's facilitation of the provision of "Esign"[1] mortgages to consumer-borrowers.

According to the plaintiffs' complaint, MERS is a Delaware corporation with its principal place of business in Virginia. MERS

---

[1] MERS contests the plaintiffs' categorization of the relevant electronic documents as "Esign" mortgages, but this dispute is not relevant to the present appeal.

created an Internet-based electronic process through which borrowers can obtain paperless Esign mortgages and engage in refinancing of mortgages, and members of the real estate mortgage industry can more easily securitize and bundle mortgages. To facilitate these transactions, MERS acts as the mortgagee of record in local recording offices regardless of the number of times a mortgage is refinanced or the relevant lenders change.

When a party executes an Esign mortgage, no physical mortgage document, such as a mortgage note, is created. Instead, the mortgage documents exist as electronic records registered on MERS's "eRegistry." When a party later wishes to refinance an Esign mortgage or otherwise assign it to another party, MERS inputs the applicable changes into its eRegistry. Thus, although MERS never physically holds a mortgage note or related instrument, MERS asserts that it facilitates mortgage and note assignments, including refinancing, utilizing its electronic database.

New York state courts have held that a lender does not have standing to commence a foreclosure action when its assignor, MERS, neither received the right to transfer the mortgage note nor physically possessed the underlying mortgage note. *See*, *e.g.*, *Bank of N.Y. v. Silverberg*, 926 N.Y.S.2d 532, 538-40 (2d Dep't 2011). Esign mortgages acquired through MERS's electronic system may be "non-assignable," which limits MERS's customers' ability to refinance their mortgages electronically and avoid recording fees, as well as MERS's ability to transfer pools of mortgages as securities.

Cutrone and Cervone obtained their first mortgage on their home in Brooklyn through an Esign mortgage that listed MERS as the nominee and mortgagee on March 27, 2008, and paid $7,476.00 in taxes as required by New York's mortgage recording tax.[2] *See* N.Y. Tax Law § 253. Four years later, they refinanced their mortgage. They were unable to utilize a New York Consolidation, Extension

---

[2] MERS is not itself a lender and did not loan the plaintiffs the funds for the initial mortgage or refinanced mortgage.

and Modification Agreement ("CEMA"), which permits a mortgagor to consolidate his original and refinanced mortgages and pay only the difference in mortgage recording tax between the two mortgages. A CEMA could not be used because MERS could not effectuate the assignment between the original and new lenders. The plaintiffs thus paid a second mortgage recording tax of $6,835.20 on their refinanced mortgage on January 7, 2013.

In their putative class action complaint, which alleges that other borrowers were also required to pay additional recording taxes because of their Esign mortgages, the plaintiffs do not specifically enumerate either the expected number of class members that will join them or the total amount of additional mortgage recording taxes paid by class members. The plaintiffs merely provide the amount of the mortgage recording tax they paid on their refinanced mortgage ($6,835.20) and estimate that the class includes "hundreds, and likely thousands, of persons and entities." The

plaintiffs also failed to specify in their response to the defendant's demand for a bill of particulars in the state court the number of members in the putative class, estimating again that there were more than 100 likely plaintiffs and, as to the damages sought by the class, that they "cannot reasonably state the precise amount in controversy."

*Federal District Court Proceedings*

On May 24, 2013, more than 90 days after the plaintiffs filed their initial complaint in New York state court, MERS filed a notice of removal in the United States District Court for the Eastern District of New York asserting diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d). The notice alleges that MERS examined its own records and concluded that its eRegistry contained more than 3,000 registered promissory notes in electronic form secured by mortgages on real property located in New York. The notice also estimates that, given the large number of relevant promissory notes in MERS's

eRegistry, "even using a conservative estimate of damages for each possible class member, there is a reasonable probability that the matter in controversy exceeds the value of $5,000,000 as required by 28 U.S.C. § 1332(d)."[3]   Finally, the notice states that MERS is a Delaware corporation with its principal place of business located in Virginia and that the named plaintiffs and all members of the purported class are citizens of New York, thus satisfying minimal diversity requirements.

On June 24, 2013, the plaintiffs filed a motion to remand, asserting that MERS's removal was untimely under 28 U.S.C. § 1446(b)(1) because the plaintiffs' complaint provided MERS with sufficient information to determine the likely number of plaintiffs and total amount in controversy.  By order dated October 28, 2013,

---

[3] A declaration filed by MERS on July 16, 2013, further explains: "Assuming that even half of the registered eNotes secured by a MERS mortgage in New York are the basis for claims that Plaintiffs were wrongly forced to pay a mortgage tax, using a conservatively low number of $3,000.00 in damages for each potential plaintiff in the putative class, Plaintiffs' aggregate claims would reach $5.5 million."

the district court granted the plaintiffs' motion, concluding that, although the complaint filed on February 20, 2013, did not specify either the total amount of damages sought or an exact number of class members, it provided MERS with "all it needed to know in order to enable it to make an intelligent assessment as to CAFA removability." *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, No. 13-CV-3075 (ENV) (VMS), 2013 WL 5960827, at *6 (E.D.N.Y. Nov. 6, 2013). Because MERS did not file its notice of removal within 30 days of receiving the complaint, the court held, its notice was untimely pursuant to 28 U.S.C. § 1446(b)(1). *Id.* at *8.

The district court rejected MERS's argument that our holding in *Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 38 (2d Cir. 2010) (per curiam), that "the removal clock does not start to run until the plaintiff serves the defendant with a paper that explicitly specifies the amount of monetary damages sought" should be applied to CAFA cases. *Cutrone*, 2013 WL 5960827, at *5-7. The district court

also reasoned that tying the removal clocks of 28 U.S.C. § 1446(b) to the serving of an explicit statement of damages would be problematic here because it would mean that the jurisdictional amount in controversy requirement of 28 U.S.C. § 1332(d) was never satisfied. *Id.* at *6. Thus, the district court ruled that it lacked subject matter jurisdiction and remanded the case to the Supreme Court of the State of New York, Kings County. *Id.* at *8.

*Appellate Proceedings*

On November 15, 2013, MERS petitioned this Court for permission to appeal the district court's remand order pursuant to 28 U.S.C. § 1453(c)(1) and Federal Rule of Appellate Procedure 5(a). It argued that its notice of removal was timely because plaintiffs' initial complaint failed to trigger the 30-day removal clock of 28 U.S.C. § 1446(b)(1) and urged this Court to extend the rule of *Moltner* to CAFA cases. We granted MERS's petition for permission to appeal on February 19, 2014. We instructed the parties to brief the

following two questions: (1) whether this Court's decision in *Moltner* applies to cases removed under CAFA and (2) whether a defendant may remove a case under CAFA if neither of the two 30-day periods set forth in 28 U.S.C. §§ 1446(b)(1) and (b)(3) is triggered because the initial pleading and other documents are indeterminate with respect to removability but the defendant later asserts removability on the basis of its own investigation. As explained below, we now answer both questions in the affirmative.

**DISCUSSION**

**I. Appellate Jurisdiction and Standard of Review**

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1453(c)(1), which provides that "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order." *See also DiTolla v. Doral Dental IPA of N.Y.*, 469 F.3d 271, 274-75 (2d Cir. 2006). Here, the district court

entered its order on November 6, 2013, and MERS filed a petition for leave to appeal on November 15, 2013, thus satisfying the applicable 10-day filing requirement.

We review *de novo* a district court's subject matter jurisdiction determination. *See id.* at 275.

**II.    Applicability of *Moltner* to CAFA Cases**

We begin with a brief explication of the relevant statutory framework for the removal of CAFA cases.  In 2005, Congress enacted the Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified, in part, at 28 U.S.C. § 1332(d)), which conferred federal jurisdiction over any class action involving: "(1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (citing 28 U.S.C. §§ 1332(d)(2), (5)(b), (6)).  In CAFA cases, the

defendant bears the burden of establishing federal subject matter jurisdiction. *See id.* at 58. To establish the requisite amount in controversy for CAFA jurisdiction pursuant to 28 U.S.C. § 1332(d), a defendant must "show that it appears to a 'reasonable probability' that the aggregate claims of the plaintiff class are in excess of $5 million." *Id.* (internal citation omitted).

A defendant's ability to remove any case satisfying federal jurisdictional predicates, including a CAFA case, is subject to statutorily-imposed time limits. The general removal statute delineates two 30-day periods during which removal may occur. *See generally* 28 U.S.C. § 1446(b). The first statutory provision requires that a defendant file its notice of removal within 30 days of the service or receipt of the initial pleading.[4] 28 U.S.C. § 1446(b)(1). The second section provides that if the case is not immediately removable, the defendant may file a notice of removal within 30

[4] 28 U.S.C. § 1446(b)(1) also provides a removal time period of "within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant…."

days of receiving "a copy of an amended pleading, motion, order or other paper from which it *may first be ascertained* that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added); *see Moltner*, 624 F.3d at 36.

Neither provision specifies the information that must be included in a plaintiff's initial pleading or other paper to trigger the 30-day periods of 28 U.S.C. § 1446(b) or how a defendant should "ascertain" removability. *See Moltner*, 624 F.3d at 36-38. The issue therefore arises, as it did in this case, of whether an indeterminate complaint or subsequent document triggers the removal clocks of 28 U.S.C. § 1446(b) in CAFA cases.

We addressed this issue in *Moltner v. Starbucks Coffee Co.*, 624 F.3d at 36-38, a personal injury suit initially filed in New York state court. There, the plaintiff allegedly suffered severe burns while drinking tea purchased from the defendant. *Id.* at 35-36. It was only in response to a letter from the defendant three months after the

plaintiff filed suit that the plaintiff disclosed she sought more than $75,000 in damages, the threshold amount for diversity jurisdiction under 28 U.S.C. § 1332(a). *Id.* at 36. The defendant filed a notice of removal within 30 days of receiving the plaintiff's letter. *Id.* In determining whether removal was timely under 28 U.S.C. § 1446(b)(3), we rejected the plaintiff's argument that the defendant should have concluded from the state court complaint that the amount in controversy would exceed $75,000 by applying "a reasonable amount of intelligence" to the complaint's general description of the plaintiff's severe injuries. *Id.* at 37. Instead, we held that "the removal clock does not start to run until the plaintiff serves the defendant with a paper that explicitly specifies the amount of monetary damages sought." *Id.* at 38. We stated that "a bright line rule is preferable to the approach [the plaintiff] advocates. Requiring a defendant to read the complaint and guess the amount of damages that the plaintiff seeks will create

uncertainty and risks increasing the time and money spent on litigation." *Id.*

Under the *Moltner* standard, defendants must still "apply a reasonable amount of intelligence in ascertaining removability." *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001); *see also Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013). However, defendants have no independent duty to investigate whether a case is removable. *See Whitaker*, 261 F.3d at 206 (observing that the "reasonable amount of intelligence" standard "does not require a defendant to look beyond the initial pleading for facts giving rise to removability"). If removability is not apparent from the allegations of an initial pleading or subsequent document, the 30-day clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered.

In drawing a bright line rule requiring service of a document explicitly stating the amount in controversy to trigger either 30-day

period in 28 U.S.C. § 1446(b) in *Moltner*, we joined the Eighth Circuit. *See* 624 F.3d at 38 (citing *In re Willis*, 228 F.3d 896, 897 (8th Cir. 2000) (per curiam) ("We find the thirty-day time limit of section 1446(b) begins running upon the receipt of the initial complaint only when the complaint explicitly discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount[;] [t]his rule promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know." (internal citation and quotation marks omitted))). That bright line rule was also consistent with the approach adopted by the Tenth Circuit. *See Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998) ("We disagree with cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove *may* exist. Rather, this court requires clear and unequivocal notice from

the pleading itself, or a subsequent 'other paper' such as an answer to interrogatory." (emphasis in original) (footnote omitted)).

Since we decided *Moltner*, at least three of our sister circuits have also adopted a rule requiring that the initial pleading or other subsequent paper contain an "unequivocal statement from the plaintiff regarding the damages sought" to trigger the removal clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3). *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013); *see Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 400 (5th Cir. 2013); *Kuxhausen*, 707 F.3d at 1139. Two of those decisions involved actions brought pursuant to CAFA.

In *Walker v. Trailer Transit Inc.*, the Seventh Circuit held that "[t]he 30-day removal clock does not begin to run until the defendant receives a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present." 727 F.3d at 824. With respect to the amount in controversy, the Seventh Circuit explained that "the pleading or other paper must

specifically disclose the amount of monetary damages sought," *id.*, and held that, with reference to § 1446(b)(3), the removal clock "commences *only* when the defendant receives a post-complaint pleading or other paper that affirmatively and unambiguously specifies a damages amount sufficient to satisfy the federal jurisdictional minimums," *id.* at 825 (emphasis in original). The Seventh Circuit explained that this "bright-line rule promotes clarity and ease of administration for the courts, discourages evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers, and reduces guesswork and wasteful protective removals by defendants," *id.* at 824, and admonished that "[a]ssessing the timeliness of removal should not involve a fact-intensive inquiry about what the defendant subjectively knew or should have discovered through independent investigation," *id.* at 825.

In *Kuxhausen v. BMW Financial Services NA LLC*, the Ninth Circuit reached a similar decision in a CAFA case in which the named plaintiff claimed damages "exceeding $50,000" for herself and asserted that the class had "hundreds" of members but failed to specify the particular amount of damages the other class members would each claim. 707 F.3d at 1140-41. On appeal, the plaintiff argued that the defendant should have either utilized the plaintiff's stated amount of damages or consulted its records to determine a representative amount in controversy and then multiplied either number by "hundreds" of class members to ascertain the likely amount in controversy. *Id.* at 1141. The Ninth Circuit rejected this reasoning, observing that "[n]owhere in th[e] pleading does [the plaintiff] allege the value, even as an approximation, of other class members' vehicle financing contracts," *id.* at 1140-41, and holding that "because nothing in [the plaintiff's] complaint indicated that the amount demanded *by each putative class member* exceeded [an

amount that, when aggregated, would satisfy the jurisdictional requirement], it fell short of triggering the removal clock under Section 1446(b)," *id.* at 1141 (emphasis in original) (internal quotation marks and alterations omitted). The Ninth Circuit explained that it would not charge defendants in CAFA cases "with notice of removability until they've received a paper that gives them enough information to remove," and observed that the defendant was not obligated to supply information that the plaintiff had omitted, even when it had access to such data. *Id.* (internal quotation marks and citation omitted). The court noted that this bright line rule would avoid a "Catch-22" for defendants seeking a federal forum but lacking sufficient removal-related information and that it would require "plaintiffs to assume the costs associated with their own indeterminate pleadings." *Id.*

We agree with these circuits and hold that, in CAFA cases, the removal clocks of 28 U.S.C. § 1446(b) are not triggered until the

plaintiff serves the defendant with an initial pleading or other document that explicitly specifies the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5,000,000 can be ascertained. While a defendant must still apply a "reasonable amount of intelligence" to its reading of a plaintiff's complaint, we do not require a defendant to perform an independent investigation into a plaintiff's indeterminate allegations to determine removability and comply with the 30-day periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3). *See Whitaker*, 261 F.3d at 206; *see also Walker*, 727 F.3d at 823-25; *Mumfrey*, 719 F.3d at 398-400; *Kuxhausen*, 707 F.3d at 1140-41; *Moltner*, 624 F.3d at 37-38. Thus, a defendant is not required to consider material outside of the complaint or other applicable documents for facts giving rise to removability, and the removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered until the plaintiff provides facts explicitly establishing

removability or alleges sufficient information for the defendant to ascertain removability.

The plaintiffs in this case do not object to the application of *Moltner* to CAFA cases, but they argue that *Moltner* should only be applied where "plaintiffs are in possession of information to explicitly specify damages." They advocate an individual analysis of the timeliness of removal based upon the availability of information to the parties. They also argue that requiring the service of a paper explicitly stating the amount in controversy to trigger the removal clocks encourages gamesmanship and delay by defendants. They point out that, in this case, MERS failed to perform an examination of its records until more than two months after plaintiffs filed their complaint.

We rejected this argument in *Moltner*, 624 F.3d at 38, and we also reject it here. As we explained in *Moltner*, a bright line rule is preferable to the uncertainties faced by defendants in determining

removability. *Id.* This approach also avoids courts "expending copious time determining what a defendant should have known or have been able to ascertain at the time of the initial pleading [or other relevant filing]." *Mumfrey*, 719 F.3d at 399. Application of the *Moltner* standard is particularly helpful in CAFA cases removed pursuant to 28 U.S.C. § 1446(b) because the size of the putative class and the $5,000,000 amount in controversy requirements are high enough that it may often initially be unclear whether they will be exceeded.

Applying a bright line rule here, neither the plaintiffs' complaint nor their subsequent response to MERS's bill of particulars explicitly specifies the aggregate amount in controversy or alleges sufficient information for the defendant to ascertain removability. The only amount provided in the complaint is that which the two named plaintiffs are seeking to recover: the $6,835.20 they paid in New York state mortgage recording taxes upon

refinancing their mortgage. Plaintiffs argue that MERS could have easily ascertained the aggregate amount in controversy for the class from the face of their complaint by multiplying $6,835.20 by the estimated number of putative class members, identified in the complaint as "hundreds, and likely thousands." However, "[n]owhere in th[e] pleading[s] do[] [the plaintiffs] allege the value, even as an approximation, of other class members' [second mortgage recording tax payments]." *Kuxhausen*, 707 F.3d at 1140-41. Because neither the plaintiffs' complaint nor their subsequent response to MERS's demand for a bill of particulars explicitly specifies the aggregate amount in controversy or provides MERS with sufficient information to conclude the threshold amount in controversy was satisfied, the 30-day removal clocks of 28 U.S.C. § 1446(b) were never triggered. Thus, MERS did not run afoul of the statutory timeliness requirements governing removal.

**III.    Exclusivity of the 30-Day Removal Periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) in CAFA Cases**

MERS's removal in this case is thus not precluded by the 30-day clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3).  Here, MERS, after its own investigation, determined that the number of class members, amount in controversy, and minimal diversity were satisfied sufficient for CAFA jurisdiction pursuant to 28 U.S.C. § 1332(d).  The question remains whether a defendant may, as MERS did here, remove an action outside of the 30-day removal limits delineated in 28 U.S.C. §§ 1446(b)(1) and (b)(3) or if they are the exclusive time periods during which a defendant may remove.

As an initial matter, we note, as have our sister circuits, that "[t]he moment a case becomes removable and the moment the 30-day removal clock begins to run 'are not two sides of the same coin.'"  *Walker*, 727 F.3d at 824 (quoting *Kuxhausen*, 707 F.3d at 1141 n.3) (citing *Mumfrey*, 719 F.3d at 400 n.13).  Thus, even if a defendant *could* remove immediately upon the filing of a complaint because the

case satisfies the requirements of federal subject matter jurisdiction, a complaint or other document from the plaintiff that does not explicitly convey the removability of a case does not trigger the removal clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3). *See Mumfrey*, 719 F.3d at 400 n.13. That is, whether a basis for removal exists and whether removal is timely are two separate questions.

As the Seventh Circuit explained in *Walker*:

> Whether the jurisdictional prerequisites [of 28 U.S.C. § 1332(d)] are in fact met is a separate determination [from whether removal is timely] and often involves consideration of materials outside the state-court pleadings. The removing defendant has the burden of proving the jurisdictional predicates for removal. In contrast, the timeliness inquiry [governed by 28 U.S.C. §§ 1446(b)(1) and (b)(3)] is limited to [] examining contents of the clock-triggering pleading or other litigation paper; the question is whether *that document*, on its face or in combination with earlier-filed pleadings, provides specific and unambiguous notice that the case satisfies federal jurisdictional requirements and therefore is removable.

727 F.3d at 824-25 (emphasis in original) (internal citation omitted);

*see also Mumfrey*, 719 F.3d at 398-99 (distinguishing between

"amount disputes" pursuant to 28 U.S.C. § 1332(d) and "timeliness disputes" under 28 U.S.C. §§ 1446(b)(1) and (b)(3) and observing that even though the defendant *could* have removed the case upon receipt of the plaintiff's complaint, the removal clock was not triggered by the face of the complaint); *Kuxhausen*, 707 F.3d at 1141 n.3 (noting that the plaintiff was incorrect in asserting that because the defendant "*could have* ventured beyond the pleadings to demonstrate removability *initially* (as it did later upon receipt of the First Amended Complaint) it was therefore *obligated* to do so." (emphases in original)). If a complaint is vague, indeterminate, or otherwise fails to convey these jurisdictional predicates, the removal clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered, but the defendant is not necessarily prohibited from removing.

When neither 30-day removal clock of 28 U.S.C. § 1446(b) was triggered, may MERS remove based on its own investigation? Implicit is the question of whether the two 30-day periods listed in

28 U.S.C. §§ 1446(b)(1) and (b)(3) are the exclusive authorizations for removal. The Ninth Circuit has resolved this question, and we agree with its approach. In *Roth v. CHA Hollywood Medical Center*, *L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013), the Ninth Circuit considered a CAFA case in which the plaintiff in a state court action failed to specify an amount of damages in her complaint but the defendants determined removability from their own investigation. On appeal, the issue was whether the defendants could remove under 28 U.S.C. § 1441(a) independently of the 30-day periods set forth in 28 U.S.C. §§ 1446(b)(1) and (b)(3). *Id.* at 1124.

The Ninth Circuit held that "§§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods [of 28 U.S.C. § 1446(b)] on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." *Id.* at 1125. Because the complaint in that case did not reveal on its face that there was a sufficient basis for jurisdiction under CAFA, the

Ninth Circuit held that it was appropriate for the defendants to remove the case after they completed their own investigation. *Id.* The court noted, "It would be odd, even perverse, to prevent removal in this case, and we see nothing in the text of §§ 1441 and 1446 to require such a result." *Id.* We also note that this result is consistent with our sister circuits that have addressed this issue and concluded, at least implicitly, that removal is permissible outside of the 30-day periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) where a defendant's own investigation yields evidence of removability. *See Mumfrey*, 719 F.3d at 398-99, 400 n.13; *Kuxhausen*, 707 F.3d at 1141 n.3.

We agree with the Ninth Circuit that the text of 28 U.S.C. § 1446(b) does not indicate that the two 30-day periods listed therein are the exclusive authorizations of removal. *See Roth*, 720 F.3d at 1125. Section 1446(b) imposes a time limit *only* in cases in which the plaintiff's initial pleading or subsequent document has explicitly

demonstrated removability. Defendants are permitted to remove outside of these periods when the time limits of 28 U.S.C. § 1446(b) are not triggered.

The plaintiffs here suggest this approach could result in "gamesmanship" and intentional delay by defendants. However, the Ninth Circuit addressed this argument in *Roth*. The Ninth Circuit noted that, because there is no one-year limitation on removals in CAFA cases pursuant to 28 U.S.C. § 1453(b), it is "at least theoretically possible in a CAFA case for a defendant to wait until the state court has shown itself ill-disposed to defendant, or until the eve of trial in state court, before filing a notice of removal." *Id.* at 1126. But, the Ninth Circuit observed:

> [P]laintiffs are in a position to protect themselves. If plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained. Such a document will trigger the [§ 1446(b)(3)] 30-day removal period[.]

*Id.* (internal citation omitted). We also believe that, in most cases, defendants will likely remove as soon as the existence of federal jurisdictional predicates becomes apparent.

MERS presented facts adequate to establish a reasonable probability that the number of the putative class is 100 or greater, that the amount in controversy likely exceeds $5,000,000, and that there is minimal diversity between the parties.[5] *See Galeno*, 472 F.3d at 57-59; *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273-74 (2d Cir. 1994). MERS thus properly removed this action once it determined removability. Because we already held above that the plaintiffs' filings failed to trigger the 30-day periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3), we conclude that MERS's removal based on its own

---

[5] The plaintiffs in this case do not argue that MERS failed to allege adequate facts to establish removability in its notice of removal or subsequent declaration.

investigation was permissible. We accordingly hold that MERS's removal was timely.[6]

**CONCLUSION**

We hold that, in CAFA cases, the 30-day removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered until the plaintiff serves the defendant with an initial pleading or other document that explicitly specifies the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5,000,000 could be ascertained. We also hold that where these documents fail to trigger the removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3), a defendant may remove a case when, upon its own independent investigation, it determines that the case is removable. Thus, we hold that the 30-day removal periods of 28

---

[6] Given our holding that MERS timely removed this case, we do not reach the question, as MERS urges us, of whether the plaintiffs' cause of action presents a federal question sufficient for jurisdiction pursuant to 28 U.S.C. § 1331.

U.S.C. §§ 1446(b)(1) and (b)(3) are not the exclusive authorizations of removal in CAFA cases.

In this case, the plaintiffs never served MERS with a complaint or subsequent document explicitly stating the amount in controversy or providing MERS with sufficient information to conclude the threshold amount in controversy was satisfied. Therefore, the removal clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3) did not commence. After MERS determined upon its independent investigation that 28 U.S.C. § 1332(d) conveyed CAFA federal jurisdiction because the amount in controversy, number of plaintiffs, and minimal diversity requirements were satisfied, it properly removed the case by alleging facts adequate to establish the amount in controversy in its notice of removal. We therefore **VACATE** the district court's order remanding the case to state court and **REMAND** the case for proceedings consistent with this opinion.