**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 22-1379 and 22-1380
_____

BARBARA MCLAREN

v.

THE UPS STORE INC; RK & SP SERVICES INC, DBA
UPS Store #4122; HAMILTON PACK N SHIP LLC, DBA
UPS Store #4122; TURQUOISE TERRAPIN LLC, DBA
UPS Store #4122,
Appellants

************

VINCENT TRIPICCHIO, on behalf of himself and all others
similarly situated

v.

THE UPS STORE INC; JB & A ENTERPRISES INC,
Appellants
_____

Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Nos. 3-21-cv-14424 & 3-21-cv-14512)

U.S. District Judge: Honorable Freda L. Wolfson, Chief
District Judge

_____

Argued March 30, 2022

_____

Before: McKEE, SHWARTZ, and BIBAS, <u>Circuit Judges</u>.

(Filed:  April 25, 2022)

_____

Kent A. Bronson [ARGUED]
Milberg Coleman Bryson Phillips & Grossman
19th Floor
100 Garden City Plaza, Suite 500
Garden City, NY 11530

Jared M. Placitella
Cohen Placitella & Roth
2001 Market Street
Two Commerce Square, Suite 2900
Philadelphia, PA 19103

Counsel for Appellee McLaren

Joseph A. Osefchen [ARGUED]
Stephen P. DeNittis
DeNittis Osefchen Prince
525 Route 73 North
5 Greentree Centre, Suite 410
Marlton, NJ 08053

Counsel for Appellee Tripicchio

Adam J. Hunt
Morrison & Foerster
250 West 55th Street, Suite 900
New York, NY 10019

Joseph R. Palmore [ARGUED]
Morrison & Foerster
2100 L Street, N.W., Suite 900
Washington, DC 20037

Counsel for Appellants

Andrew M. Schwartz
Gordon & Rees
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103

Counsel for Appellant JB & A Enterprises, Inc.

———————————

OPINION

———————————

SHWARTZ, <u>Circuit Judge</u>.

The removal statute sets deadlines by which a defendant may remove a case from state to federal court. One provision requires removal within thirty days of service of a pleading that demonstrates the existence of federal jurisdiction. If the initial

pleading does not disclose the existence of federal jurisdiction, a separate provision permits removal within thirty days of the date on which a defendant receives an amended pleading, motion, order, or other paper that discloses federal jurisdiction.

In this case, the initial pleadings did not demonstrate the existence of federal jurisdiction, and the defendants never received any paper that disclosed jurisdiction. Thus, no thirty-day clock began to run, and so removal here was timely. As a result, the District Court incorrectly held that removal was untimely, and we will vacate the order remanding these cases to state court.

District courts must, however, decline from exercising jurisdiction under certain circumstances. We will therefore remand to the District Court for it to consider whether the local controversy exception under the Class Action Fairness Act ("CAFA") requires it to decline to decide these timely removed cases.

I

Plaintiffs purchased notary services at UPS stores in New Jersey. They assert, in two separate putative class action complaints brought against The UPS Store, Inc. ("TUPSS") and several of its New Jersey franchisees (collectively with TUPSS, "Defendants"), that the local UPS Stores charged them an amount for notary services that exceeded the $2.50 fee permitted by New Jersey state law. In one case, McLaren v. The UPS Store, Inc., Plaintiff asserts that she paid $5.00 for a notary service. In the other case, Tripicchio v. The UPS Store, Inc., Plaintiff alleges that he was charged $2.50 for a notary service plus a $12.50 "notary convenience fee." Each Plaintiff

4

brings New Jersey state law claims that permit compensatory damages, treble damages, and attorneys' fees. Tripicchio also asserts a claim that carries a $100 statutory penalty per class member.

Plaintiffs filed their complaints in New Jersey Superior Court. Plaintiff McLaren filed her complaint in May 2020, and Plaintiff Tripicchio filed his complaint in November 2020. Each complaint describes the class members as those who paid fees for notary services, or who were charged more than $2.50 for notary services. McLaren's complaint alleges that Defendants' records would identify the "hundreds if not thousands" of class members. App. 130-31 ¶ 75. Tripicchio's complaint alleges that his putative class includes "less than 5,000 persons," and that Defendants' records would identify them. App. 200-01 ¶ 8. Neither complaint's class definition is explicitly limited to New Jersey citizens, but each named Plaintiff is alleged to be a New Jersey citizen, and each complaint alleges that TUPSS is not a citizen of New Jersey. Neither complaint alleges that the amount in controversy exceeds $5 million. In fact, Tripicchio's complaint states that the amount in controversy is less than $1 million.

Defendants moved to dismiss McLaren's complaint. The state court denied the motion on November 13, 2020. Defendants thereafter filed an interlocutory appeal with the New Jersey Superior Court, Appellate Division. In July 2021, the Appellate Division affirmed the trial court's order in part, allowing McLaren to proceed on some of her New Jersey state law claims. McLaren v. UPS Store, Inc., No. A-1612-20, 2021 WL 308515 (N.J. Super. Ct. App. Div. July 22, 2021).

While the appeal was pending, TUPSS responded to McLaren's discovery demands. In December 2020, TUPSS

5

produced a spreadsheet showing that the New Jersey UPS stores had more than one million notary transactions during the six-year class period. Because it disclosed the number of transactions at issue, the spreadsheet, together with the complaints, revealed that each case had an amount in controversy that satisfied federal jurisdiction under CAFA.[1]

Defendants removed both complaints to federal court, asserting that CAFA's jurisdictional requirements were met. In their removal petitions, which were filed just days after they received the Appellate Division's 2021 adverse ruling, Defendants asserted that the District Court has jurisdiction because each case involves minimally diverse parties, each case involves a plaintiff class of at least 100 members, and TUPSS's internal corporate documents demonstrate that the number of notary transactions allegedly exceeding $2.50 could lead to damages exceeding $5 million in each case.

Plaintiffs moved to remand. The District Court granted the motion, finding that the complaints' allegations allowed Defendants to "reasonably and intelligently" conclude that the cases were removable under CAFA because the complaints

---

[1] CAFA's required amount in controversy is $5 million in the aggregate. 28 U.S.C. § 1332(d)(2). Using the information in the spreadsheet, McLaren's suit involves 1,068,852 transactions in which customers were overcharged $2.50, which yields treble damages of at least $8,016,390. Tripicchio's suit involves the same number of transactions but if each transaction involved an overcharged amount of $12.50, and if that amount were trebled, and each transaction triggered the $100 statutory per-class-member penalty, the amount in controversy would be at least $40,081,950.

disclosed sufficient information for TUPSS to calculate the amount in controversy when considered alongside TUPSS's transaction records. App. 71, see also id. 72-73 (citing 28 U.S.C. § 1446(b)(1)). The District Court reasoned that Defendants could have performed this calculation upon receipt of the complaints or, at latest, when the spreadsheet was produced in December 2020, and thus the removal petitions filed months later were untimely. Because it found that removal was untimely, the Court did not consider whether CAFA's local controversy exception also required remand.

We granted Defendants' petition for permission to appeal the remand orders.

II[2]

A

---

[2] The District Court had removal jurisdiction pursuant to 28 U.S.C. §§ 1332(d)(2), 1453(b), 1441(a), and 1446(a). We have jurisdiction pursuant to 28 U.S.C. § 1453(c)

Defendants may remove civil actions from state court to federal court so long as the district court would have had subject-matter jurisdiction had the case been originally filed before it.  28 U.S.C. § 1441.  CAFA confers "original [subject-matter] jurisdiction of any civil action" where the amount in controversy exceeds $5,000,000, the parties are minimally diverse, and the class consists of 100 or more members.  Id. § 1332(d)(2), (5)(B), (6); Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495, 500 (3d Cir. 2014).

Defendants removing under CAFA must comply with the time limits of the removal statute, 28 U.S.C. § 1446, except that the one-year outer deadline for removing cases based on diversity jurisdiction does not apply.  See id. § 1453(b).

Two thirty-day clocks limit the time within which a defendant may remove a case.  Id. § 1446.  First, under § 1446(b)(1), a defendant has thirty days to file a notice of removal "after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief."  Second, "if the case stated by the initial pleading is not removable," then, under § 1446(b)(3), a case may be removed within thirty days "after receipt by the

---

("[N]otwithstanding section 1447(d) [—which makes orders remanding a case to State court unreviewable, see 28 U.S.C. § 1447(d)—] a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action . . . if application is made to the court of appeals not more than 10 days after entry of the order.").  We "review issues of subject matter jurisdiction and statutory interpretation de novo."  Walsh v. Defs., Inc., 894 F.3d 583, 586 (3d Cir. 2018).

defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Subsection (b)(3) "is an exception to" (b)(1), in that it only applies if the initial pleading did not give defendant notice of removability. A.S. ex rel. Miller v. SmithKline Beecham Corp., 769 F.3d 204, 208-09 (3d Cir. 2014). Each provision, however, is triggered only when the defendant receives a particular document: in (b)(1) the initial pleading, and in (b)(3) an amended pleading, motion, order, or other paper. If either provision is triggered, removal after thirty days is prohibited. See Roth v. CHA Hollywood Med. Ctr. L.P., 720 F.3d 1121, 1125 (9th Cir. 2013) (holding that 28 U.S.C. §§ 1441 and 1446 "permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines [in § 1446(b)]").

We next examine whether removal here was timely under either (b)(1) or (b)(3).

B

1

We first consider whether either McLaren's or Tripicchio's complaint triggered (b)(1)'s thirty-day clock. The clock is triggered where "the document informs the reader, to a substantial degree of specificity, [that] all the elements of

federal jurisdiction are present." Foster v. Mut. Fire, Marine & Inland Ins. Co., 986 F.2d 48, 53 (3d Cir. 1993) (quoting Rowe v. Marder, 750 F. Supp. 718, 721 (W.D. Pa. 1990), aff'd, 935 F.2d 1282 (3d Cir. 1991)). Thus, when a district court evaluates whether a case is removable under (b)(1), the "inquiry begins and ends within the four corners of the pleading." Id.

McLaren's complaint sets forth allegations that satisfy CAFA's numerosity and diversity requirements, but it does not identify the amount in controversy "to a substantial degree of specificity." Id. As to numerosity, McLaren alleges that members of her putative class number "hundreds if not thousands of individuals." App. 130-31 ¶ 75. The complaint thus put Defendants on notice of at least 2,000 class members. See Kuxhausen v. BMW Fin. Servs., NA, LLC, 707 F.3d 1136, 1140 (9th Cir. 2013) ("a class of 'thousands of persons' implies a logical minimum of 2,000 class members"). As to diversity, McLaren alleges that she is a citizen of New Jersey, and that TUPSS is incorporated in Delaware and headquartered outside of New Jersey.

As to the amount in controversy, however, McLaren's complaint does not provide "a clear statement of the damages sought or . . . sufficient facts from which damages can be readily calculated," Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 69 (1st Cir. 2014), nor does it "affirmatively reveal[] on its face that [she] is seeking damages in excess of the minimum jurisdictional amount," Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 399 (5th Cir. 2013) (quoting Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir. 1992)). McLaren's complaint alleges that each store charged "notary fees of $5 instead of $2.50 for each notarial act performed,"

10

App. 125 ¶ 49, and that "[t]housands of similarly-situated New Jersey customers were similarly overcharged at UPS Stores throughout New Jersey," App. 135 ¶ 89. If the amount of overcharge ($2.50) were multiplied by the number of class members specified (no less than 2000), damages would total $5,000, and, even if trebled, the amount in controversy would be far below CAFA's $5 million requirement. Because the complaint does not reveal the number of notary services provided at the allegedly prohibited rate, it does not inform Defendants "to a substantial degree of specificity" that the amount in controversy exceeded $5 million. Foster, 986 F.2d at 53 (quoting Rowe, 750 F. Supp. at 721). Thus, McLaren's initial pleading did not trigger (b)(1)'s removal clock.

Tripicchio's complaint also reveals facts satisfying CAFA's numerosity and diversity requirements, but it does not set forth "sufficient facts from which damages can be readily calculated." Romulus, 770 F.3d at 69. As to numerosity, Tripicchio asserts a class of "at least 100 persons." App. 205 ¶ 37. As to diversity, Tripicchio states that he is a citizen of New Jersey and TUPSS is a citizen of Delaware and California. As to the amount in controversy, the complaint specifically alleges that "the total amount in controversy is far less than $5 million." App. 200 ¶ 8. In addition to this disclaimer, the amount calculable from the pleadings does not meet the CAFA minimum. Tripicchio's proposed class includes "[a]ll persons who were charged a fee of more than $2.50," and a subclass of "[a]ll persons who were charged a $12.50 'Notary Convenience' fee." App. 204-05 ¶¶ 34-35. If each member of the subclass (no less than 100) was overcharged by $12.50, and those damages were trebled, Tripicchio would be seeking compensatory damages of $3,750. Adding this to the $100-per-class-member statutory penalty he seeks, Tripicchio's class

damages would be around $13,750, far below the CAFA minimum. In sum, the four corners of Tripicchio's complaint did not trigger (b)(1)'s thirty-day removal clock either.

2

Plaintiffs assert that Defendants possessed information concerning the number of notary services they provided, and that such information would have informed them that the amount in controversy for CAFA jurisdiction was satisfied. Because Defendants had such information when they were served with the complaints, Plaintiffs argue that Defendants were required to remove these cases within thirty days of the date they received the initial pleading. Plaintiffs are incorrect.

As we will later explain, the text of § 1446(b) requires that courts focus on what a defendant receives, and not on what knowledge it possesses. Thus, whether removal is timely under § 1446(b) depends on "whether [a] document [the defendant receives] informs the reader, to a substantial degree of specificity, [that] all the elements of federal jurisdiction are present." Foster, 986 F.2d at 53 (quoting Rowe, 750 F. Supp. at 721); see also Papp v. Fore-Kast Sales Co., Inc., 842 F.3d 805, 816 n.10 (3d Cir. 2016) (observing in dicta that the § 1446(b) clocks do not require defendants to make "deduction[s]" from plaintiffs' submissions to discern removability). This approach saves courts from "arduous inquiries into defendants' state of mind." Foster, 986 F.2d at 53. Here, because the four corners of each complaint Defendants received did not provide facts from which they could ascertain federal subject matter jurisdiction, the (b)(1) clock never began to run.

C

12

We next examine whether the thirty-day clock under (b)(3) was triggered. As stated previously, if the initial pleading does not show that the case is removable, then, under (b)(3), a case may be removed "within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Plaintiffs assert that Defendants could have ascertained that the cases were removable based on their own records and, at the latest, should have removed the cases within thirty days of producing the spreadsheet that set forth the number of notary transactions during the class period, because that number enabled Defendants to determine that the amount in controversy exceeded $5 million. Although Plaintiffs' position has common-sense appeal, the text of the statute does not permit adopting it.

The text of § 1446(b) shows that the only documents that trigger either thirty-day clock are those documents "recei[ved] by the defendant." 28 U.S.C. § 1446(b)(1), (3). Subsection (b)(1) requires removal "within thirty days after the receipt by the defendant . . . of a copy of the initial pleading," and (b)(3) permits removal "within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper" from which federal jurisdiction can be ascertained. 28 U.S.C. § 1446(b)(1), (3). The plain language of the statute focuses only on what a defendant receives. Thus, the statute does not contemplate that the thirty-day clock would

be triggered by information that the defendant already possesses or knows from its own records.[3]

Our observations in <u>Foster</u> are consistent with this interpretation. As we stated in <u>Foster</u>, the time clocks in § 1446(b) depend not on "what the defendants purportedly knew." 986 F.2d at 54. Many of our sister circuits agree. Those courts have held that the § 1446(b) clocks are triggered based only on what a defendant can ascertain from the four corners of the plaintiff's complaint or other paper the defendant receives.[4]

---

[3] Although many of the documents listed in § 1446(b) are of the type that generally only come from a plaintiff, such as pleadings, others in the list can come from other sources. For instance, motions could be filed by other parties, and orders can come from courts. Thus, the § 1446(b) clocks are triggered only by documents a defendant receives, but the triggering document in (b)(3) need not come from the plaintiff.

[4] <u>See</u> <u>Gibson v. Clean Harbors Env't Servs., Inc.</u>, 840 F.3d 515, 519 (8th Cir. 2016) (holding clock does not run "until the defendant receives from the plaintiff [a document] from which the defendant can unambiguously ascertain that the CAFA jurisdictional requirements have been satisfied") (quotation marks and citation omitted); <u>Paros Props. LLC v. Colo. Cas. Ins. Co.</u>, 835 F.3d 1264, 1269 (10th Cir. 2016) (describing, in a non-CAFA case, court's "very strict" approach in assessing whether "grounds for removal are ascertainable" because plaintiff's statement must provide clear and unequivocal notice); <u>Graiser v. Visionworks Am.</u>, 819 F.3d 277, 285 (6th Cir. 2016) (holding document from the plaintiff must allow defendant to "unambiguously ascertain" CAFA jurisdiction); <u>Romulus</u>, 770 F.3d at 69 (holding in a

This "bright-line rule," <u>Walker v. Trailer Transit, Inc.</u>, 727 F.3d 819, 824 (7th Cir. 2013), advances judicial economy, prevents premature (protective) removals, and discourages evasive or ambiguous pleading. First, inquiring into what the defendant knew, rather than what a document states, could "degenerate into a mini-trial," <u>Lovern v. Gen. Motors Corp.</u>, 121 F.3d 160, 162 (4th Cir. 1997). Thus, a bright-line rule "promotes clarity and ease of administration for the courts." <u>Walker</u>, 727 F.3d at 824; <u>see also</u> <u>Cutrone v. Mortg. Elec. Registration Sys., Inc.</u>, 749 F.3d 137, 145 (2d Cir. 2014) (rejecting plaintiff's argument that defendant failed to examine its records when it received the complaint because the bright-line rule "also avoids courts 'expending copious time determining what a defendant should have known or have been able to ascertain at the time of the initial pleading [or other relevant filing]'" (quoting <u>Mumfrey</u>, 719 F.3d at 399 (alteration in original))); <u>Foster</u>, 986 F.2d at 53 (observing that,

CAFA case that time limits only apply "when the plaintiffs' pleadings or . . . other papers provide the defendant with a clear statement of the damages sought or with sufficient facts from which damages can be readily calculated"); <u>Cutrone v. Mortg. Elec. Registration Sys., Inc.</u>, 749 F.3d 137, 139 (2d Cir. 2014) (holding, in a CAFA case, thirty-day clocks are not triggered until "the plaintiff serves the defendant with an initial pleading or other paper that explicitly specifies the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5,000,000 can be ascertained"); <u>Walker v. Trailer Transit, Inc.</u>, 727 F.3d 819, 821, 825 (7th Cir. 2013) (holding, in a CAFA case, thirty-day clocks are triggered only by plaintiff's paper that, "on its face or in combination with earlier-filed pleadings," "affirmatively and unambiguously reveals" removability).

by evaluating removability based only on the "the four corners of the pleading," courts are saved from "arduous inquiries into defendants' state of mind").

Second, ensuring that the § 1446(b) clocks are not triggered by unclear or incomplete information about removability discourages defendants from "remov[ing] cases prematurely for fear of accidentally letting the thirty-day window to federal court close." Mumfrey, 719 F.3d at 399.

Third, the rule discourages plaintiffs from attempting to "prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own." Roth, 720 F.3d at 1125; see also Romulus, 770 F.3d at 75 ("In the absence of something like a bright-line approach, plaintiffs would have no incentive to specify estimated damages early in litigation.").

Section 1446(b)'s use of the phrase "receipt by the defendant" also prohibits courts from imposing a duty on defendants to investigate the records they possess. Although a defendant has a duty to "apply a reasonable amount of intelligence to its reading" of the documents it receives, it has no duty "to search its own business records or 'perform an independent investigation into a plaintiff's indeterminate allegations to determine removability.'" Gibson v. Clean Harbors Env't Servs., Inc., 840 F.3d 515, 519 (8th Cir. 2016) (quoting Graiser v. Visionworks of Am., 819 F.3d 277, 285 (6th Cir. 2016)); Romulus, 770 F.3d at 75 ("The defendant has no duty . . . to investigate or to supply facts outside of those provided by the plaintiff."); Mumfrey, 719 F.3d at 399 (declining to adopt a rule that would "expect defendants to

16

'ascertain[] from the circumstance[s] and the initial pleading'" that damages exceeded the amount-in-controversy requirement) (quoting Chapman, 969 F.2d at 163 (alterations in original)); cf. Kuxhausen, 707 F.3d at 1140 ("Multiplying figures clearly stated in a complaint is an aspect of [reasonable intelligence].").  Thus, the text and the weight of authority demonstrate that a defendant must apply ordinary intelligence in reading the documents it receives, but it need not search its own records to determine whether federal jurisdiction exists.

This approach, of course, increases the possibility that, in CAFA cases, a defendant may delay removing a state case to federal court until it finds the state court disadvantageous, such as after an unfavorable ruling.  See, e.g., Roth, 720 F.3d at 1125 ("A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so."); Graiser, 819 F.3d at 286 ("We are mindful of the concern that, under this rule, a defendant could ignore information in its possession that supports removability, and—with no removal clock ticking— delay litigation in state court unless and until the federal forum proves more desirable.").  This reasonable concern exists because the statute does not impose any outer time limit on removal in class action cases, and thus defendants could

17

theoretically remove during a state court trial.[5] Defendants even conceded this possibility at oral argument. The concern is also logically based on the reality that, in many cases, the defendant may be the only party who has access to information that reveals a case's removability. These legitimate concerns, however, do not allow us to ignore the plain text of the statute. Moreover, as other courts have explained, plaintiffs "are also 'in a position to protect themselves' from the gamesmanship of which they warn" because they can file a complaint or conduct discovery and thereafter provide the defendant with a paper from which federal jurisdiction can be ascertained and thereby start the removal clock. Romulus, 770 F.3d at 76 (quoting Roth, 720 F.3d at 1126); see also Graiser, 819 F.3d at 286 (noting four corners approach "provides both sides with tools to prevent gamesmanship" (quotation marks and citation omitted)).

---

[5] In Lovern, a non-CAFA case, the Court of Appeals for the Fourth Circuit noted that "strategic delay interposed by a defendant in an effort to determine the state court's receptivity to his litigating position" is prevented by the one-year limit on removal. See Lovern, 121 F.3d at 163 (observing that, in diversity cases, the removal statute "explicitly safeguards against such a strategic delay by erecting an absolute bar to removal of [diversity] cases . . . 'more than 1 year after commencement of the action'" and explaining that the bar creates "a sufficient incentive for defendants promptly to investigate the factual requisites for diversity jurisdiction, including the citizenship of the plaintiff and the amount in controversy") (quoting 28 U.S.C. § 1446(b)). As previously stated, this one-year time limit does not apply to class action cases, so the safeguard on which the Lovern court relied is absent here. 28 U.S.C. § 1453(b).

18

Thus, despite these legitimate concerns, § 1446(b)'s text dictates that the thirty-day clocks are triggered by either the four corners of the initial complaint or documents a defendant receives, and not by what the defendant subjectively knew or the documents in its possession.

2

Mindful of the text of the statute as well as our sister circuits' interpretations and observations, we next examine whether (b)(3)'s thirty-day clock was triggered here.

The District Court did not explicitly hold that § 1446(b)(3)'s clock began to run. Rather, it held the removal notices should have been filed "at the latest, on December 11, 2020, when [Defendants] provided" the spreadsheet showing the number of transactions at issue. App. 72. This information, according to the District Court, provided "sufficient facts from which damages can be readily calculated" in each case, App. 71, and hence Defendants had a document from which removability could be ascertained. The spreadsheet here, however, was not the type of document that started the (b)(3) clock because it was not "recei[ved] by [a] defendant." 28 U.S.C. § 1446(b)(3). Instead, the spreadsheet was a document that the defendant produced.[6] Thus, the spreadsheet did not

---

[6] During oral argument, McLaren asserted that she referenced the spreadsheet in a discovery dispute motion that she served on TUPSS. See also McLaren v. The UPS Store, No. 3:21-cv-14424, ECF No. 1-3 at 482. She argues that once she provided TUPSS with her motion, which appended TUPSS' discovery responses that referenced a spreadsheet

19

trigger the thirty-day clock, and Defendants were therefore not required to remove within thirty days of its production on December 11, 2020.

Because the complaints did not reveal facts from which Defendants could ascertain removability under CAFA, and because the spreadsheet TUPSS produced was not "recei[ved] by [D]efendant[s]," no thirty-day removal clock started. As a result, Defendants' removals were timely. 28 U.S.C. § 1446(b)(1), (3).

D

Even if a federal court has jurisdiction under CAFA, it must decline to exercise that jurisdiction if the class action involves a local controversy. 28 U.S.C. § 1332; Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 148 (3d Cir. 2009). In evaluating whether removal is proper, "we generally focus on the allegations in the [c]omplaint and the notice of removal," but we may also consider "evidence that the parties submit to determine whether subject matter jurisdiction exists or an exception thereto applies." Vodenichar v. Halcon Energy

_____

TUPSS possessed, Defendants received information about a document that contained information from which removability could be ascertained. Because this argument was not raised in the briefs to the District Court or us, it is waived. Nelson v. Adams USA, Inc., 529 U.S. 460, 469 (2000) ("It is . . . the general rule that issues must be raised in lower courts in order to be preserved as potential grounds of decision in higher courts."); United States v. Pellulo, 399 F.3d 197, 222 (3d Cir. 2005) (waiver on appeal where party fails to "identify or argue an issue in [her] opening [appellate] brief").

Props., Inc., 733 F.3d 497, 503 & n.1 (3d Cir. 2013) (quotation marks and citations omitted).

McLaren asserts that the local controversy exception under 28 U.S.C. § 1332(d)(4)(A) applies and that remand is required.[7]  Because the District Court did not decide whether the local controversy exception applies, and because fact gathering may be needed to determine if each element of the

---

[7] Only McLaren invoked the exception; Tripicchio did not.  Defendants, however, do not argue that Tripicchio waived or forfeited his right to invoke the exception.  So, we leave it to the District Court to determine whether the exception applies in Tripicchio as well.

cal controversy exception is met,[8] we will remand to allow the Court to consider whether it must decline to decide these timely removed cases.[9] See, e.g., Mondragon v. Capital One Auto Fin., 736 F.3d 880, 884-85 (9th Cir. 2013) (noting the need to consider factual record when there is a dispute about class member citizenship and remanding to district court to permit plaintiff to gather and submit evidence regarding local

_____

[8] Under the exception, a district court must decline jurisdiction where six requirements are met:

> (1) greater than two-thirds of the putative class are citizens of the state in which the action was originally filed; (2) at least one defendant is a citizen of the state in which the action was originally filed (the "local defendant"); (3) the local defendant's conduct forms a significant basis for the claims asserted; (4) plaintiffs are seeking significant relief from the local defendant; (5) the principal injuries occurred in the state in which the action was originally filed; and (6) no other class action asserting the same or similar allegations against any of the defendants had been filed in the preceding three years.

Vodenichar, 733 F.3d at 506-07. The party invoking the exception bears the burden of proving these conditions by a preponderance of the evidence. Id. at 503.

[9] Contrary to Defendants' argument, McLaren did not waive her request to conduct discovery concerning the applicability of the local controversy exception. McLaren v. The UPS Store, No. 3:21-cv-14424, ECF No. 15 at 6 n.6.

22

controversy exception); <u>In re Sprint Nextel Corp.</u>, 593 F.3d 669, 676 (7th Cir. 2010) (vacating remand order and remanding to the district court to "give the plaintiffs another opportunity to prove that the proposed class satisfies the requirements of the home-state exception"); <u>see also</u> <u>Walsh v. Defs., Inc.</u>, 894 F.3d 583, 588 (3d Cir. 2018) (permitting remand, following a motion for reconsideration of an order previously denying remand, based upon evidence disclosed during class discovery that showed the local controversy exception was satisfied).

## III

For the foregoing reasons, we will vacate the order remanding the cases to state court and remand to the District Court for further proceedings.